Monique Olivier (SBN 190385)
monique@os-legal.com
Christian Schreiber (SBN 245597)
christian@os-legal.com
OLIVIER & SCHREIBER PC
475 14th Street, Suite 250
Oakland, CA 94612
Telephone: (415) 484-0980
Facsimile: (415) 658-7758

Phillip R. Poliner (SBN 156145)
Phillip@FinemanPoliner.com
Neil B. Fineman (SBN 177915)
Neil@FinemanPoliner.com
FINEMAN POLINER LLP
155 North Riverview Drive
Anaheim Hills, California 92808-1225
Telephone: (714) 620-1125
Facsimile: (714) 701-0155

*Attorney for Plaintiff*
*and the Putative Class*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALERIE HARVEY, on behalf of herself and all others similarly situated, | Case No. 3:25-cv-01242-CRB |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| v. | |
| WORLD MARKET, LLC, COST PLUS WORLD MARKET, LLC, and DOES 1-10 inclusive, | Date:     April 18, 2025<br>Time:     10:00 a.m.<br>Location: Courtroom 6 – 17th Floor<br>Judge:    Hon. Charles R. Breyer |
| Defendants. | |

## **TABLE OF CONTENTS**

I.      SUMMARY OF ARGUMENT ...............................................................................1

II.     INTRODUCTION ...............................................................................................1

III.    PROCEDURAL AND FACTUAL BACKGROUND...........................................2

IV.     ARGUMENT ......................................................................................................3

   A.   The Legislative History of Senate Bill 478, the Junk Fee Amendment.................3

   B.   Plaintiff's CLRA Claim Is Adequately Alleged ...............................................5

      1.   Plaintiff has pleaded all the necessary elements of her CLRA Claim. ............5

      2.   Defendants misrepresent the applicable pleading standard. .........................6

      3.   Defendants' theory of liability would vitiate Cal. Civ. C. § 1770(a)(29). .........9

      4.   Defendants' baseless claim that they charge "actual" shipping costs cannot support dismissal under Rule 12(b)(6)........................................................11

      5.   Plaintiff did not get the "benefit of the bargain" by buying Defendants' product..........11

   C.   Plaintiff Has Adequately Alleged Claims Under the UCL and FAL.................15

      1.   Plaintiff's UCL claim.........................................................................15

      2.   Plaintiff's FAL claim ........................................................................16

   D.   Even if Plaintiff's Claims Sounded In Fraud, She Has Adequately Pleaded Claims Under Fed. R. Civ. Proc. 9(b). ......................................................17

   E.   Defendants' Claim That Plaintiff Lacks Standing Is At Odds With Its Claim of Removal Jurisdiction...................................................................................19

   F.   Plaintiff Should Be Granted Leave To Amend If Necessary............................20

V.      CONCLUSION..................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Acevedo v. Sunnova Energy Corp.*,
738 F.Supp.3d 1268 (C.D. Cal. 2024) ........................................................................16

*Bly-Magee v. California*,
236 F.3d 1014 (9th Cir. 2001) ...................................................................................17

*Brown v. Van's International Foods, Inc.*,
622 F.Supp.3d 817 (N.D. Cal. 2022) ..........................................................................8

*Charbonnet v. Omni Hotels and Resorts*,
2020 WL 7385828 (S.D. Cal., Dec. 16, 2020, No. 20-CV-01777-CAB-DEB) ...................12, 13

*Clevenger v. Welch Foods Inc.*,
2023 WL 2390630 (C.D. Cal. Mar. 7, 2023)..................................................................20

*Colgan v. Leatherman Tool Group, Inc.*,
135 Cal. App. 4th 663 (2006) .....................................................................................7

*Collins v. eMachines, Inc.*,
202 Cal. App. 4th 249 (2011) .....................................................................................9

*Consumer Advocates v. Echostar Satellite Corp.*,
113 Cal. App. 4th 1351 (2003) ..............................................................................16, 17

*Daniel v. Ford Motor Co.*,
806 F.3d 1217 (9th Cir. 2015) ...................................................................................16

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ................................................................................17, 20

*Falk v. General Motors Corp.*,
496 F.Supp.2d 1088 (N.D. Cal. 2007).........................................................................17

*Guzman v. Polaris Industries Inc.*,
49 F.4th 1308 (9th Cir. 2022)....................................................................................20

*Hall v. Marriott International, Inc.*,
344 F.R.D. 247 (S.D. Cal. 2023) ...............................................................................14

*Hall v. Time Inc.*,
158 Cal. App. 4th 847 (2008) ...............................................................................11, 12

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. 2013) ................................................................6, 10

*Holden v. Fluent, Inc.*,
   2020 WL 6822914 (N.D. Cal. Nov. 20, 2020) ........................................20

*In re Gupta Corp. Securities Litigation*,
   900 F.Supp. 1217 (N.D. Cal. 1994) ........................................................17

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ....................................................................13, 15

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ...............................................................17

*Keegan v. American Honda Motor Co., Inc.*
   838 F.Supp.2d 929 (C.D. Cal. 2012) ........................................................5

*LeGrand v. Abbott Laboratories*,
   655 F.Supp.3d 871 (N.D. Cal. 2023) .......................................................16

*McGinity v. Procter & Gamble Company*,
   69 F.4th 1093 (9th Cir. 2023) .................................................................7

*Meyer v. Sprint Spectrum L.P.*,
   45 Cal. 4th 634 (2009) ...............................................................1, 6, 12

*Moore v. Mars Petcare US, Inc.*,
   966 F.3d 1007 (9th Cir. 2020) .................................................................7

*Oh v. Catalina Snacks, Inc.*,
   2025 WL 352776 (C.D. Cal. Jan. 29, 2025) ...............................................8

*O'Shea v. Epson America, Inc.*,
   2011 WL 3299936 (C.D. Cal. July 29, 2011) .............................................14

*Peterson v. Cellco Partnership*,
   164 Cal. App. 4th 1583 (2008) ..........................................................11, 12

*Polo v. Innoventions International, LLC*,
   833 F.3d 1193 (9th Cir. 2016) ...............................................................20

*Rasmussen v. Apple Inc.*,
   27 F.Supp.3d 1027 (N.D. Cal. 2014) ........................................................7

*Reid v. Johnson & Johnson*,
   780 F.3d 952 (9th Cir. 2015) ..................................................................8

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 3:25-CV-01242-CRB

*Reyes v. Just Born, Inc.*,
    729 F.Supp.3d 971 (C.D. Cal. 2024) .......................................................................................8

*Rice-Sherman v. Big Heart Pet Brands, Inc.*,
    2020 WL 1245130 (N.D. Cal. Mar. 16, 2020) ........................................................................7

*Scherer v. FCA US, LLC*,
    565 F.Supp.3d 1184 (S.D. Cal. 2021) ....................................................................................17

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ...............................................................................................................19

*Stewart v. Kodiak Cakes, LLC*,
    537 F.Supp.3d 1103 (S.D. Cal. 2021) ....................................................................................17

*Takahashi-Mendoza v. Cooperative Regions of Organic Producer Pools*,
    673 F.Supp.3d 1083 (N.D. Cal. 2023) .....................................................................................8

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ...............................................................................................................20

*Veera v. Banana Republic, LLC*,
    6 Cal. App. 5th 907 (2016) .................................................................................8, 10, 14, 15

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ...............................................................................................17

*VP Racing Fuels, Inc. v. General Petroleum Corp.*,
    673 F.Supp.2d 1073 (E.D. Cal. 2009) ...................................................................................16

*Warner v. Tinder Inc.*,
    105 F.Supp.3d 1083 (C.D. Cal. 2015) ...................................................................................12

*Washington v. Baenziger*,
    673 F.Supp. 1478 (N.D. Cal. 1987), .................................................................................17, 18

*Watson v. Crumbl LLC*,
    736 F.Supp.3d 827 (E.D. Cal. 2024) ....................................................................................6, 7

*Williams v. Gerber Products Co.*,
    552 F.3d 934 (9th Cir. 2008) ...............................................................................................6, 7

*Zimmerman v. Oregon Dept. of Justice*,
    170 F.3d 1169 (9th Cir. 1999) ...............................................................................................10

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 3:25-CV-01242-CRB

## Statutes

28 U.S.C. §§ 1332(d), 1441, and 1453 ........................................................................2

Cal. Bus. & Prof. Code § 17200 ........................................................................1, 15

Cal. Bus. & Prof. Code § 17500 ..............................................................................1

Cal. Civ. Code § 1750 ..............................................................................................1

Cal. Civ. Code § 1760 ..............................................................................................5

Cal. Civ. Code § 1770(a) ...................................................................................Passim

Cal. Civ. Code § 1780 ..............................................................................................6

## Rules

Fed. R. Civ. Proc. 9 .......................................................................................2, 17, 19

Fed. R. Civ. Proc. 12(b)(1) .....................................................................................19

## Other Authorities

Assembly Committee on Judiciary, Analysis of Senate Bill 478, 2023-2024 Regular Session, hearing on June 27, 2023 ........................................................................4, 14

Assembly Committee on Privacy and Consumer Protection, Analysis of Senate Bill 478, 2023-2024 Regular Session, hearing on July 11, 2023 ..............................................5

California Department of Justice, SB 478 Frequently Asked Questions ..............................5, 10, 13

Senate Judiciary Committee, Analysis of Senate Bill 478, 2023-2024 Regular Session (Feb. 14, 2023) ........................................................................................................4

Senate Rules Committee, Office of Senate Floor Analyses, Third Reading Analysis of Senate Bill 478, 2023-2024 Regular Session ........................................................................4

Senate Third Reading, Analysis of Senate Bill 478, 2023-2024 Regular Session, as Amended August 14, 2023 ........................................................................................5

1

## I.    SUMMARY OF ARGUMENT

2

The California Legislature has endorsed a public policy of honest pricing by making it

3

illegal to lure consumers to purchase products with advertisements that hide the true cost of a

4

product. "Drip fees" or "junk fees," as they have come to be known, are added at the time a

5

product is purchased, and dramatically increase the advertised price. These charges go by various

6

names – "handling fees," "processing fees," and, as here, "oversize item surcharges" – but they

7

are illegal because they are a species of unlawful "bait-and-switch" sales tactics that harm

8

consumers and undermine honest pricing practices. The Consumers Legal Remedies Act, Cal.

9

Civ. C. § 1750, *et seq.* ("CLRA") was amended in 2023 to make this prohibition explicit.

10

Though Defendants have engaged in this unlawful practice, they seek to dismiss Plaintiff's

11

putative consumer class action on grounds that Plaintiff has not suffered "economic injury" from

12

their conduct, and thus lacks standing to bring claims. Plaintiff maintains that she has adequately

13

pleaded all elements of her claims under the CLRA, the Unfair Competition Law, Cal. Bus. &

14

Prof. C. § 17200, *et seq.* ("UCL"), and the False Advertising Law, Cal. Bus. & Prof. C. § 17500,

15

*et seq.* ("FAL"). The California Supreme Court has determined that a plaintiff may suffer damage

16

under the CLRA even from non-pecuniary "transaction costs," *Meyer v. Sprint Spectrum L.P.*, 45

17

Cal. 4th 634, 643, 646 (2009), which the amended section of the CLRA acknowledges. Cal. Civ.

18

C. § 1770(a)(29). Here, Plaintiff paid junk fees and shipping costs that exceeded the actual and

19

reasonable costs to ship her item, thus suffering an injury sufficient to confer standing under the

20

UCL and FAL.

21

## II.    INTRODUCTION

22

Defendants World Market, LLC and Cost Plus World Market, LLC ("Defendants")

23

advertise products at one price in order to lure the customer into a purchase, then add oversize

24

item surcharges, handling fees, and shipping costs that are not the "reasonably and actually

25

incurred" costs to ship the items purchased. Plaintiff Valerie Harvey challenges Defendants'

26

practices under the CLRA, UCL, and FAL. Defendants' Motion to Dismiss ("Motion") asks the

27

Court to conclude at the pleading stage that their conduct is legal, in spite of the fact that it is

28

paradigmatic of the type of drip pricing the law prohibits. The Court should reject the proposition

1

1 and deny the Motion.

2      Defendants' theories of the law do not withstand scrutiny. They claim that Plaintiff lacks

3 standing because she was not damaged by Defendants' conduct, which they admit involves the

4 imposition of junk fees not disclosed in the advertised price – because the fees were disclosed

5 before she paid. And, though her complaint does not sound in common law fraud, Defendants

6 also contend that Plaintiff's complaint fails to allege facts specific enough to satisfy Fed. R. Civ.

7 Proc. 9. Neither theory is correct. Plaintiff has alleged with particularity how Defendants' conduct

8 caused her harm, and she has adequately alleged violations of the CLRA, the UCL, and the FAL.

9 In fact, Plaintiff has alleged facts well beyond what would satisfy even the heightened pleading

10 standards under Fed. R. Civ. Proc. 9.

11      Defendants ask the Court to adopt an extreme interpretation of these laws that would

12 vitiate the letter and spirit of their consumer protection purposes. Their Motion should be denied.

13 **III.    PROCEDURAL AND FACTUAL BACKGROUND**

14      Plaintiff filed this action in the Alameda County Superior Court on October 3, 2024, on

15 behalf of a class of California consumers, seeking injunctive relief. On November 8, 2024,

16 Plaintiff filed a First Amended Complaint ("FAC"), amending the Complaint to add claims for

17 monetary damages for Defendants' alleged violations. Plaintiff subsequently filed a Second

18 Amended Complaint ("SAC") on January 7, 2025, which amended the definition of the putative

19 class to include all individuals who were charged unlawful mandatory fees, and added further

20 allegations that Defendants' conduct emanated from California. Defendants removed the case

21 pursuant to 28 U.S.C. §§ 1332(d), 1441, and 1453 on February 5, 2025. ECF 1.

22      Plaintiff alleges that consumers who purchase items online from the World Market store

23 are lured onto the World Market website by the promise of false prices. World Market advertises

24 prices that fail to include various mandatory fees it ultimately charges at checkout. Plaintiff

25 alleges that Defendants violate California law in three ways. First, they charge an "oversized item

26 surcharge" for certain goods, which is not disclosed in the advertised price. SAC ¶¶ 3-5. Second,

27 in addition to shipping fees, Defendants charge "handling fees" that are not disclosed in the

28 advertised price. SAC ¶¶ 3-4. Third, Plaintiff alleges that Defendants violate California law

through the imposition of "shipping fees" that are based on a purchase price of an item rather than the "reasonably and actually incurred" cost of shipping the item purchased. SAC ¶¶ 3-5, 25, 53.

On or around September 9, 2024, Plaintiff purchased a set of two Jarle Molded Resin Outdoor Armchairs. SAC ¶ 6. World Market advertised the price of the set of chairs as $429.99 on its website. SAC ¶ 6. However, when Plaintiff added the set of chairs to her cart to purchase, an "Oversized Item Surcharge" of $50.00, as well as a "Shipping and Handling" charge of $49.95, were added to the total cost of the item. SAC ¶ 6.

Plaintiff alleges violations of the CLRA, the UCL, the FAL, and seeks damages, declaratory and injunctive relief, and attorneys' fees and costs on behalf of a national class of consumers. SAC ¶¶ 29, 45-48, 51-56, 59-66.

## IV.    ARGUMENT

### A.  The Legislative History of Senate Bill 478, the Junk Fee Amendment

California Senate Bill 478 ("SB 478"), 2023-24 Reg. Sess., amended the CLRA, effective July 1, 2024, by adding a new provision to section 1770(a), which lists the acts and practices proscribed under the CLRA. The so-called "Junk Fee" amendment prohibits businesses from:

(A) Advertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges other than either of the following:

(i) Taxes or fees imposed by a government on the transaction.

(ii) Postage or carriage charges that will be reasonably and actually incurred to ship the physical good to the consumer.

Cal. Civ. C. § 1770(a)(29).

The legislative history of SB 478 identifies the business practices that the amendment was intended to address, including the timing of the conduct in a consumer buying experience. The bill's purpose was extensively documented in its passage through three policy committees in the Legislature, and the analyses for those committees are included in Plaintiffs' Request for Judicial Notice ("Pltf. RJN"), filed herewith. For example, the Senate Judiciary Committee's analysis of SB 478 cites to a study from the Federal Trade Commission, *The Economics of Drip Pricing* (https://www.ftc.gov/news-events/events/2012/05/economicsdrip-pricing), and notes that, "This

bill broadly targets the offering of a price for a good or service that does not include all attendant

fees and charges, commonly referred to as drip pricing. Pltf. RJN, Ex. B, p. 5. The analysis further

states:

> Junk fees force consumers either to accept a higher actual price for a service or product **after beginning the transaction or to spend more time searching for lower actual prices elsewhere**. Consumers faced with such fees pay upward of twenty percent more than when the actual price was disclosed upfront…These fees artificially disrupt the balance of the market, resulting in significant market misallocations. Because in a price-obscuring transaction consumers initiate purchasing decisions without knowing the actual cost…. SB 478 combats the bait-and-switch advertising practice in which a seller uses an artificially low headline price to attract a customer and usually either discloses additional required fees in smaller print, **or reveals additional charges later in the buying process**.
> …
> The final purchase price for a good or service shouldn't be a mystery for California consumers.

Pltf. RJN, Ex. B, pp. 5-7 (emphasis added, internal punctuation cleaned up).

The subsequent Senate Floor analysis of the bill states that "**Junk fees impose substantial economic harms on consumers** and impede the dissemination of important market information … Junk fees force consumers either to accept a higher actual price for a service or product after beginning the transaction or to spend more time searching for lower actual prices elsewhere." Pltf. RJN, Ex. C (Senate Floor Analysis at p. 5). The legislative history indicates that the deceptive practice the bill sought to address was *when* a business must disclose mandatory fees in the purchasing process:

> SB 478 specifically confronts the deceptive advertising practice in which a seller uses an artificially low headline price to attract a customer and usually either discloses additional required fees in smaller print, or reveals additional charges later in the buying process….A large body of evidence shows that mandatory fees charged **at the back-end of the buying process** – sometimes referred to as "drip" prices – along with other types of junk fees make it harder to comparison shop.

*See id.*, Ex. D (Assembly Judiciary Committee Analysis at pp. 2-3).

The Assembly Judiciary Committee's analysis notes that the focus of the bill is on "price advertising as opposed to price disclosure." The analysis explains this:

> The distinction is somewhat nuanced, but important: price transparency must happen at the initial point of advertising, not just before the point-of-sale. The rationale for initial transparency is rooted in psychology (and consistent with

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 3:25-CV-01242-CRB

common daily experiences shopping)….This bill thus focuses on the very initial price advertising for two related reasons: first, to ensure that consumers are presented with full and complete price information before they make a purchase that may be to their financial detriment; and second, to level the playing field among advertisers, so that the advertiser who seeks to lure a consumer through the real or online "door" cannot do so by under-disclosing the actual cost of their good or service in their advertisements.

*Id.* at p. 6; *see also,* Ex. E (Assembly Committee on Privacy and Consumer Protection analysis, p. 5); Ex. F at p. 2.

Finally, with respect to section 1770(a)(A)(ii), regarding actual and reasonable shipping costs, the Assembly Committee on Privacy and Consumer Protection analysis considered an amendment made to the bill to address the challenges of disclosing an accurate shipping cost at the beginning of the transaction:

The qualifier "will be reasonably and actually incurred" is critical to the functioning of this amendment. It is meant to ensure that later-disclosed shipping charges reflect the actual cost of shipping the product. Without this qualifier, this exemption might open a loophole for new junk fees. An online retailer might lure a shopper in (particularly if the shopper relies on third-party websites allowing price comparison) by showing a product at a price much lower than any of its competitors, and then, just before payment, display an inflated shipping charge that brings the total cost to buy the product in line with the retailer's competitors. This would be a new form of junk fee, but because of the phrase "will be reasonably and actually incurred," this practice would be prohibited under this amendment.

*Id.,* Ex. E at p. 9.

After the bill was enacted, the California Attorney General added a description of the new provision to its website, including an interpretation of the bill's purpose and the interpretation of its enforcement by the Department. *See* Pltf. RJN, Ex. A.

### B.  Plaintiff's CLRA Claim Is Adequately Alleged

#### 1.  *Plaintiff has pleaded all the necessary elements of her CLRA Claim.*

The CLRA is to be "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." *Keegan v. Am. Honda Motor Co., Inc.,* 838 F.Supp.2d 929, 938 (C.D. Cal. 2012); Cal. Civ. C. § 1760. The CLRA requires only that a plaintiff suffer some "damage" to establish standing, but that damage need not even be

compensable. Cal. Civ. C. § 1780. As the California Supreme Court has explained, "damage" is given "broad meaning" to encompass "the expenditure of…transaction costs to avoid the consequences of a deceptive practice…whether or not those transaction costs are cognizable as 'actual damages.'" *Meyer*, *supra*, 45 Cal. 4th at 643. "Because the 'any damage' standard includes even minor pecuniary damage…any plaintiff who has standing under the UCL's…'lost money or property' requirement will, *a fortiori,* have suffered 'any damage' for purposes of establishing CLRA standing." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1108 (9th Cir. 2013). Here, because Plaintiff paid excess shipping costs and paid Defendants' junk fees during the purchase of goods, she has lost money or property for UCL standing purposes, and she has likewise suffered "damage" that satisfies the CLRA's standing requirement.

Plaintiff alleges that she shopped online for chairs and viewed an advertisement from the World Market website. SAC ¶ 18. She viewed a pair of chairs that were advertised for $429.99. *Id.* ¶¶ 20-21. No "oversize item surcharge" or "handling fee" was disclosed in the advertisement. *Id.* When she proceeded to check out, however, Defendants added charges not disclosed in the advertisement – $50 for an "oversize item surcharge" and $49.95 fee for "shipping and *handling*." *Id.* ¶ 22. She further alleges that the cost attributable to "shipping" is not Defendants' actual cost of shipping the items. *Id.* ¶ 25. Plaintiff purchased the chairs and paid the fees. *Id.* ¶¶ 19, 55. Plaintiff alleges that Defendants' conduct misleads consumers, and that the "hidden fees make it difficult for consumers to compare prices offered by different sites, and consistently results in consumers spending considerably more than they otherwise would." *Id.* ¶ 27. Plaintiff has thus adequately pleaded a violation of the CLRA.

### 2. *Defendants misrepresent the applicable pleading standard.*

Defendants misinterpret the caselaw and the elements of the CLRA claim here by claiming that Plaintiff fails to plead "actual reliance" on Defendants' conduct. Mot. at 9:2-11. Defendants' position is incorrect for multiple reasons.

First, "Violations of the CLRA are analyzed under the reasonable consumer test, which requires a plaintiff to show members of the public are likely to be deceived by a defendant's activity." *Watson v. Crumbl LLC*, 736 F.Supp.3d 827, 841 (E.D. Cal. 2024) (citing *Williams v.*

1   *Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (internal punctuation cleaned up)); *Colgan*

2   *v. Leatherman Tool Grp., Inc.,* 135 Cal. App. 4th 663, 680 (2006) ("[c]onduct that is 'likely to

3   mislead a reasonable consumer'…violates the CLRA"). The reasonable consumer test requires a

4   probability "that a significant portion of the general consuming public or of targeted consumers,

5   acting reasonably in the circumstances, could be misled. [] The touchstone under this test is

6   whether the product labeling and ads promoting the product have a meaningful capacity to

7   deceive." *Id.* (citing *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023)).

8   The CLRA prohibits "not only advertising which is false, but also advertising which, although

9   true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or

10  confuse the public." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020)

11  (quoting *Williams*, *supra*, 552 F.3d at 938).

12          Defendants wrongly contend that Plaintiff's CLRA "claims sound in fraud," which

13  conflates what the CLRA makes unlawful as a deceptive practice with common law fraud. The

14  distinction is critical because the CLRA's reasonable consumer test – which inquires whether a

15  reasonable consumer is likely to be deceived by the defendant's conduct – differs from common

16  law fraud, which requires the plaintiff to prove the defendant had an intent to deceive. Mot. at 11.

17  Here, Plaintiff's CLRA claim is based on a violation of the statute that specifically prohibits drip

18  pricing, Cal. Civ. C. § 1770(a)(29), because Defendants fail to disclose mandatory fees in the

19  advertised price of its products, and charge Plaintiff for shipping costs that were not "reasonably

20  and actually incurred" to ship her purchase. SAC ¶¶ 45-46. Where claims under the CLRA do not

21  sound in fraud, such as claims based on omissions or other deceptive practices like Defendants'

22  conduct here, courts apply the "reasonable consumer" test described above. *Rasmussen v. Apple*

23  *Inc.*, 27 F.Supp.3d 1027, 1032 (N.D. Cal. 2014) (distinguishing a failure to disclose claim under

24  the CLRA from a CLRA claim brought on the basis of an affirmative misrepresentation).

25          Under this standard, it is well settled that courts "rarely grant" a motion to dismiss for

26  failure to satisfy this test in the initial pleadings "[b]ecause what a reasonable person would

27  believe is generally a question of fact." *Watson*, 736 F.Supp. 3d at 841 (citing *Rice-Sherman v.*

28  *Big Heart Pet Brands, Inc.*, No. 19-03613, 2020 WL 1245130, at *9 (N.D. Cal. Mar. 16, 2020));

1    *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) ("[T]he reasonable consumer

2    standard ... raises questions of fact that are appropriate for resolution on a motion to dismiss only

3    in 'rare situation[s].'"); *Reyes v. Just Born, Inc.*, 729 F.Supp.3d 971, 978 (C.D. Cal. 2024);

4    *Takahashi-Mendoza v. Coop. Regions of Organic Producer Pools*, 673 F.Supp.3d 1083, 1092

5    (N.D. Cal. 2023).

6          <u>Second</u>, even if the Court were to conclude that Plaintiff is required to plead actual

7    reliance, she has done so. The SAC alleges that Plaintiff (and the putative class) relied on

8    Defendants' conduct, would not have purchased the product from Defendants, that Defendants'

9    omissions were material, and that she was harmed as a result. SAC ¶¶ 43-44.

10          Courts have rejected the idea that "a plaintiff alleging reliance on an omission must

11    necessarily invoke the term 'reliance.'…[T]he standard for pleading reliance on an omission can

12    be established "various ways….particularly where the semantic illogic in requiring a plaintiff to

13    recite that she has 'relied on' information that has been omitted." *Brown v. Van's Int'l Foods,*

14    *Inc.*, 622 F.Supp.3d 817, 827 (N.D. Cal. 2022). While a plaintiff must show that the

15    misrepresentation was an immediate cause of the injury-producing conduct, the plaintiff need not

16    demonstrate it was the only cause. "'It is not ... necessary that [the plaintiff's] reliance upon the

17    truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor in

18    influencing his conduct.... It is enough that the representation has played a substantial part, and so

19    has been a substantial factor, in influencing his decision." *Veera v. Banana Republic, LLC*, 6 Cal.

20    App. 5th 907, 919 (2016). "To adequately allege reliance, a plaintiff must, at minimum, allege

21    that he saw the representation at issue." *Oh v. Catalina Snacks, Inc.*, No. 2:24-CV-08625-SVW-

22    MAR, 2025 WL 352776, at *6 (C.D. Cal. Jan. 29, 2025). In *Oh*, the court denied a motion to

23    dismiss a product labeling complaint, finding that the plaintiff alleged he and other consumers

24    were able to view the package online, which was "sufficient at this early stage to establish that

25    Plaintiff ascertained the size of the Product's packaging before making his purchase. This

26    conclusion is bolstered by the Court's obligation to make all reasonable inferences in favor of the

27    non-moving party. Plaintiff has thus sufficiently pled actual reliance." *Id.* at *6. Here, Plaintiff

28    alleges that she viewed an advertisement for the chairs she purchased, which did not include the

1  mandatory fees later added by Defendants. She also alleges that she would not have purchased the

2  product but for the fact that Defendants advertised a falsely-lower price for the product.

3        Third, Plaintiff's drip pricing/junk fee CLRA claims here are akin to an "omission" or

4  "failure to disclose" CLRA claim, making the sufficiency of her allegations even more stark, and

5  the Defendants' position even less tenable. For "failure to disclose" claims, California courts have

6  generally provided that there are four circumstances in which a duty to disclose may arise: (1)

7  when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge

8  of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant

9  actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial

10  representations that are misleading because some other material fact has not been disclosed.

11  *Collins v. eMachines, Inc.,* 202 Cal. App. 4th 249, 255 (2011). Here, beyond the requirements

12  imposed by Cal. Civ. C. § 1770(a)(29), the latter three circumstances would all trigger

13  Defendants' duty to disclose the mandatory fees it charges. The fees are known exclusively to

14  Defendants, and are material because they can dramatically change the advertised price of a

15  product; in Plaintiff's case the fees added 23.4% to the advertised price of her item.

16        **3.   *Defendants' theory of liability would vitiate Cal. Civ. C. § 1770(a)(29).***

17        The Court should reject out of hand Defendants' extreme interpretation of the CLRA's

18  junk fee provision, which would render it unenforceable. As a starting point, Defendants attempt

19  to elide the *three* separate aspects of Defendants' conduct challenged in Plaintiff's complaint – the

20  "oversize item surcharge," the "handling fee," and the shipping cost that is based on the purchase

21  price of the item (rather than the weight of the item) – by calling them "Delivery Charges." Mot.

22  at 1. However, whether combined into a seemingly "singular" charge or considered individually,

23  Defendants' attempted sleight of hand is of no moment because *none* of the fees is disclosed in

24  the advertised price of the products on Defendants' website.

25        According to Defendants, Plaintiff *could never* proceed on a claim under the CLRA

26  because: (1) the fees she paid were disclosed before she clicked "buy" in the online checkout; and

27  (2) by consummating the purchase, she eliminated the possibility of a cognizable economic

28  injury. According to Defendants, the untimely disclosure of mandatory fees – provided it occurs

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 3:25-CV-01242-CRB

before the consumer finalizes the transaction – ensures that the consumer can suffer no injury because she "knowingly pay[s] for a product or service that she, in fact, receives." Mot. at 12. This nonsensical interpretation has been rejected by other courts as contrary to the purpose of the CLRA, even *before* the adoption of section 1770(a)(29). *See Veera*, *supra*, 6 Cal. App. 5th at 922; *Hinojos*, 718 F.3d at 1108 (holding that the CLRA's "any damage" requirement is "capacious" and includes "any pecuniary damage as well as opportunity costs and transaction costs that result when a consumer is misled by deceptive marketing practices").

While the statute's plain language does not require the Court to resort to the legislative history of the law, should it choose to do so, it must conclude that Defendants' interpretation is undeniably at odds with it. *Zimmerman v. Oregon Dep't of Just.*, 170 F.3d 1169, 1179 (9th Cir. 1999). Their position is also contrary to the interpretation of the statute offered by the California Attorney General, which includes the following description on its website of the "Honest Pricing Law" or "Hidden Fees Statute" (Cal. Civ. C. § 1770(a)(29)):

> **What is the purpose of the law?**
>
> …Advertising or listing a price that is less than what a consumer will eventually be charged is a form of deceptive advertising that also violates existing state and federal law. Truthful price advertising helps businesses compete fairly on price and allows consumers to make accurate price comparisons.
>
> **Can a business comply with this law by disclosing additional required fees before a consumer finalizes a transaction?**
>
> No. The advertised or listed price must be the full price that the consumer is required to pay.
>
> **Can a business comply with this law by advertising a price that is less than what a consumer will actually have to pay, but disclosing that additional fees will be added?**
>
> No. The price advertised to the consumer must be the full price that the consumer is required to pay.

*See* Pltf. RJN, Ex. A (available at https://oag.ca.gov/hiddenfees). In sum, Defendants' position cannot be squared with the caselaw under the CLRA, the plain language of the statute, or the legislative history.

### 4. *Defendants' baseless claim that they charge "actual" shipping costs cannot support dismissal under Rule 12(b)(6).*

In addition to the unlawful "oversize item surcharge" and the "handling fees," Plaintiff also alleges that Defendants violate section 1770(a)(29) because they do not charge the "reasonable and actual" cost of shipping the specific item purchased. Defendants concede that their shipping policy charges for shipping based on the *price* of the item purchased. *See* Mot. at 10-11; SAC ¶¶ 5, 25, 46. Under Defendants' challenged shipping policy, a 3-pound item that sells for $50 would incur a shipping cost far less than a 3-pound item that sells for $500. Defendants offer the conclusory statement that "the sum of those charges reflects World Market's costs to deliver the items." Mot. at 11. But Defendants offer no evidence supporting such an assertion, only that baseless contention. This is inadequate to establish either that such charges are "actual" or whether such charges are reasonable under section 1770(a)(29). As the Court must presume the truth of Plaintiff's allegations as the non-moving party under Rule 12(b)(6), Defendants have failed to sufficiently challenge Plaintiff's allegation, and have failed meet their burden to have Plaintiff's claim dismissed.

### 5. *Plaintiff did not get the "benefit of the bargain" by buying Defendants' product.*

Defendants also attempt to analogize cases in which courts have found no standing under the UCL where the plaintiffs failed to allege causation or economic injury. None of the cases cited by Defendants (Mot. at 12-15), however, interpret Cal. Civ. C. § 1770(a)(29), and none alter the analysis above because they are inapposite or plainly distinguishable. Both *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 850 (2008) and *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1586 (2008), for example, involved claims under the UCL, not the CLRA. In *Hall*, the Court of Appeal concluded that a plaintiff could not state a claim under the UCL because he failed to allege that he was harmed by defendant's conduct. *Id.* at 857. The narrow question presented to the Court was whether the plaintiff's receipt of an invoice during a free trial period was fraudulent or unfair because it convinced the plaintiff that he "was obligated to keep and pay for the book upon receipt." *Id.* However, because the plaintiff did not actually pay the invoice during the trial period, he could not prove that the defendant's conduct caused him to lose money or property, and thus

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 3:25-CV-01242-CRB

1    lacked standing under the UCL. *Id.* Similarly, in *Peterson*, the court held that plaintiffs failed to

2    allege any economic injury because "They do not allege they could have bought the same

3    insurance for a lower price either directly from the insurer or from a licensed agent. Absent such

4    an allegation, plaintiffs have not shown they suffered actual economic injury." 164 Cal. App. 4th

5    at 1591. *Warner v. Tinder Inc.*, 105 F.Supp.3d 1083 (C.D. Cal. 2015) also involved UCL claims

6    (and FAL) and was similarly dismissed because the plaintiff failed to allege that his subscription

7    "was worth less than what he paid for it." *Id.* at 1095.

8        Here, Plaintiff has alleged the type of harm cognizable under the CLRA – and particularly

9    section 1770(a)(29) – which was absent in *Hall*, *Peterson*, and *Warner*. Unlike the plaintiffs in

10   those cases, Plaintiff's damages arise from the payment of *fees* beyond the value of the *product*

11   she purchased. Thus, while the plaintiffs in *Hall*, *Peterson*, and *Warner* received the value of the

12   product they wanted to buy (a book, an insurance policy, and a subscription), Plaintiff was

13   charged mandatory fees *beyond the value of the product itself*, which altered the benefit of the

14   bargain she made. Furthermore, Plaintiff here alleges that she paid *additional* shipping fees that

15   not only went beyond what was advertised but also beyond what was "reasonable and actually

16   incurred" to ship the product she purchased. SAC ¶¶ 42, 44. Thus, Plaintiff has alleged precisely

17   the type of causation and economic injury absent in those cases. Given the CLRA's liberal

18   definition of "damage,"[1] Plaintiff has more than sufficiently plead a claim under the statute.

19       *Charbonnet v. Omni Hotels and Resorts*, 2020 WL 7385828 (S.D. Cal., Dec. 16, 2020,

20   No. 20-CV-01777-CAB-DEB), is another pre-junk-fee-amendment case and also easily

21   distinguished. In *Charbonnet*, the plaintiff alleged that a hotel operator failed to disclose

22   mandatory fees for a room charge that was advertised at a lower rate on the Expedia website than

23

24   ─────────────────────

25   [1] Defendants also cite *Meyer v. Sprint Spectrum L.P.*, *supra*, 45 Cal.4th 634 (Mot. at 12-13), but
     the court's holding supports Plaintiff's position because it acknowledges that "transaction costs"

26   and "opportunity costs" are encompassed by the type of damages anticipated by Cal. Civ. C. §
     1770(a)(29). "If 'any damage' and 'actual damages' were synonymous, then it seems likely only

27   the latter phrase would have been used in the first part of subdivision (a). The juxtaposition of the
     two phrases so close together indicates that the phrases have different meanings. … 'any damage'

28   may encompass harms other than pecuniary damages, such as certain types of transaction costs
     and opportunity costs." *Id.* at 640 (footnote omitted).

1    what was ultimately paid at the time of purchase. *Id.* at *1. The parties agreed "Omni's Expedia

2    …explicitly discloses that the daily rate advertised does not equal the total cost of the room. On

3    the same page as the daily rate, on a line of text directly beneath it, Omni states the higher, total

4    price for the room that 'includes taxes & fees.'" *Id.* at *3 (internal citations omitted). The court

5    concluded, "This disclosure would put a reasonable consumer on notice that they would be

6    charged some taxes and fees in addition to the daily rate for the total price." *Id.*

7    　　　　Unlike the website in *Charbonnet*, Defendants' website at the time did <u>not</u> disclose on the

8    same page as the advertised price that a consumer will also be charged mandatory fees.[2] In fact,

9    the advertised price of Plaintiff's item included a banner that touts "Free Shipping on $49+

10   Orders." SAC ¶ 21. Thus, even under the standard identified by the *Charbonnet* court,

11   Defendants' failure to identify mandatory fees would be likely to mislead a consumer under the

12   "reasonable consumer" test, which the court applied to each of the plaintiff's claims. *Id.* at *3.

13   Though *Charbonnet* is contrary to the great weight of authority under the CLRA, its holding is of

14   limited utility because the CLRA was subsequently amended *to address precisely the type of*

15   *conduct challenged in the case*. As Defendants concede, the Legislature amended the CLRA to

16   combat this type of false advertising when it passed the junk fee amendment in 2023. *See* Mot. at

17   10 (citing Def.'s Request for Judicial Notice, Ex. A, p. 8.) ("Experience has shown that

18   codification under the CLRA is effective at ending the identified unlawful business practices.").

19   　　　　Though the proper focus under the consumer protection laws is on the defendant's

20   conduct, not the plaintiff's (*In re Tobacco II Cases*, 46 Cal. 4th 298, 324 (2009)), Defendants

21   attempt to gin up problems with irrelevant aspects of Plaintiff's experience. For example,

22   Defendants concede that Plaintiff has alleged that its conduct was material to her decision (Mot.

23   at 14 (citing SAC ¶ 43)), but contend that the allegation of materiality is implausible or

24

25   [2] The *Charbonnet* court's description of the Omni Expedia page offers additional distinctions
     between the Omni Expedia website and the World Market advertisement. "[A] reasonable
26   consumer booking a room on Omni's Expedia page need not 'go on a research mission to
     determine what the added 'fees' are' or 'intuit' that the property fee would be added to their total
27   bill." *Charbonnet*, 2020 WL 7385828, at *4. Here, there is neither an obvious link on the World
     Market page, nor a simple way for a consumer to find out what fees would apply, and how they
28   are calculated before proceeding to purchase.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 3:25-CV-01242-CRB

1   speculative. Though the mandatory fees added by Defendants increased the advertised price of the

2   chairs by nearly 25%, Defendants contend this cannot be material because Plaintiff was told about

3   the fees before finalizing the purchase, and because she could only have purchased Defendants'

4   model-of-chair from Defendants' store. Mot. at 14-15. Defendants' arguments are thin reeds that

5   do not hold up the weight of Defendants' burden on this motion.

6        In an omission case, a fact is deemed "material," requiring that the manufacturer disclose

7   it if a "reasonable consumer" would deem it "important in determining how to act in the

8   transaction at issue." *Id.* at 256, 134 Cal.Rptr.3d 588; *see also O'Shea v. Epson Am., Inc.,* No. CV

9   09–8063 PSG CWX, 2011 WL 3299936, at *6 (C.D. Cal. July 29, 2011) ("Materiality exists if

10  the omitted information would cause a reasonable consumer to behave differently if he or she

11  were aware of it."). To state a claim under the CLRA (or the UCL or FAL), the focus is on

12  whether a reasonable consumer would be misled by the Defendants' conduct; a plaintiff is not

13  required to allege that she would have purchased an *identical* product elsewhere, only that she

14  would not have purchased the product she purchased had the disclosure been made up-front. Pltf.

15  RJN, Ex. D at p. 6. This, in turn, is typically a question for the jury, and why the cases cited by

16  Defendants are inapplicable in light of the facts here. [3]

17       This is also why the California Court of Appeal's analysis in *Veera* is most apt for a direct

18  challenge under section 1770(a)(29). *Veera* involved a consumer who was lured into a Banana

19  Republic store on the false promise of a 40% discount advertised in the window, who nonetheless

20  purchased items after learning the discount did not apply. The court rejected the defendant's

21  interpretation of standing, causation, and materiality – the same arguments Defendants advance

22  here – in reversing the trial court's grant of summary judgment, and explained why a bait-and-

23  switch scheme may be unlawful whether it works or fails:

24

---

25  [3] Each of the cases cited by Defendants at pages 15-18 pre-date the 2023 amendment to the
CLRA, and none involve remotely analogous facts. For example, in *Hall v. Marriott Int'l, Inc.*,

26  344 F.R.D. 247, 258 (S.D. Cal. 2023), *on reconsideration in part*, No. 19CV1715-JO-AHG, 2023
WL 9692466 (S.D. Cal. June 6, 2023), the court granted summary judgment for a website whose

27  advertised price was qualified as *starting* "From" a rate, which the consumer could see by

28  clicking on button that said "View Rates." Here, Defendants offered no such qualification of the
advertised price.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 3:25-CV-01242-CRB

> [O]ne of the dangers is that the consumer will rely on the deceptive advertising to decide to buy merchandise. Then, when the deception is revealed, the consumer, now invested in the decision to buy and swept up in the momentum of events, nonetheless buys at the inflated price, despite his or her better judgment. If such a scheme is unsuccessful—that is, if the consumer is able to resist the influence of the momentum to buy created by the chain of events flowing from the false advertising—the consumer has no standing to bring a private action under Proposition 64, because the consumer has suffered no economic injury.

*Veera*, 6 Cal. App. 5th at 921.

*Veera* concluded that this was a question properly left to a jury, which would be charged with determining whether the type of "luring" scheme violates the CLRA, UCL, and FAL. Here, Plaintiff has sufficiently alleged materiality.

### C.  Plaintiff Has Adequately Alleged Claims Under the UCL and FAL.

Defendant gives cursory treatment to Plaintiff's UCL and FAL claims, but the gravamen of their argument is that Plaintiff has not suffered "economic injury" and thus lacks standing under both statutes. Mot. at 19. Defendants argument fails for the same reasons outlined above.

#### 1.  *Plaintiff's UCL claim*

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. C. § 17200. Plaintiff alleges that Defendants violated the unlawful prong of the UCL based on its violation of CLRA section 1770(a)(29). SAC ¶ 51.

Though Plaintiff's UCL claim is not brought under the fraud prong, Plaintiff must still plead actual reliance on Defendant's conduct, and allege that she suffered a loss of money or property as a result of Defendants' conduct. *Id.* at 1362-63 (citing *In re Tobacco II Cases*, 46 Cal. 4th at 320). Plaintiff has plainly done so. As set forth above, Plaintiff alleges throughout the SAC that Defendants violated section 1770(a)(29) by failing to include mandatory fees in the advertised price of the item she purchased, including "handling fees" and an "oversize item surcharge." *See*, *infra*, § III.C.1. Plaintiff further alleges that she lost money by paying more than the "reasonable and actual" cost of shipping her product, in part because her shipping cost was based on her purchase price. *See*, *infra*, § III.C.4.

1    Fraudulent omissions are actionable under the UCL so long as Plaintiff shows "actual

2    reliance." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015). "This reliance is

3    presumed when the omission is material, as in where 'a reasonable consumer would attach

4    importance to its existence or nonexistence in determining his choice of action in the transaction

5    in question.'" *Acevedo v. Sunnova Energy Corp.*, 738 F.Supp.3d 1268, 1281 (C.D. Cal. 2024)

6    (citing *Daniel*, 806 F.3d at 1125). In *Acevedo*, the court denied a motion to dismiss in a case

7    brought by the purchaser of a solar energy system who alleged that the defendant omitted material

8    facts about the true cost of the system. *Acevedo*, 738 F.Supp.3d at 1281. In denying the motion,

9    the court held that the plaintiff had adequately pleaded actual reliance because "Plaintiff alleges

10   that he would have refused to engage at all" in the sales process had he known the true cost. *Id.*

11   "The Court can reasonably infer from this that Defendant's alleged omissions are material, and

12   that Plaintiff presumptively relied on those omissions." *Id.*

13   Here, the SAC includes the same kind of allegations from which the Court can conclude

14   Plaintiff actually relied on the omissions of Defendants. First, the charges paid by Plaintiff are

15   undeniably material: the oversize item surcharge and "shipping and handling" fee alone represent

16   an increase of nearly 25% of the advertised price of the item she purchased. Plaintiff alleges that

17   Defendants' failure to disclose all mandatory fees "was deceptive because it was intended to and

18   did mislead and deceive Plaintiff and members of the Class." SAC ¶ 52. Plaintiff also alleges the

19   same for Defendants' imposition of shipping costs that were not actual or reasonable. *Id.* ¶ 53.

20   Plaintiff further alleges that she would not have purchased the product had she known the true

21   cost of the product. *Id.* ¶ 43. In sum, Plaintiff has included allegations that support all elements of

22   a UCL claim, including actual reliance.

23          **2.  *Plaintiff's FAL claim***

24   The FAL makes unlawful "untrue or misleading" advertising. *LeGrand v. Abbott Lab'ys*,

25   655 F.Supp.3d 871, 885 (N.D. Cal. 2023). To state a claim under the FAL, a plaintiff must show

26   that the statements were untrue or misleading and that the defendant knew or should have known

27   this. *VP Racing Fuels, Inc. v. General Petroleum Corp.*, 673 F.Supp.2d 1073, 1082 (E.D. Cal.

28   2009); *Consumer Advocs. v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1353-54 (2003).

As with the CLRA, the FAL and the fraudulent prong of the UCL substantively overlap, and both require showing that members of the public are likely to be deceived by the representations; *Stewart v. Kodiak Cakes, LLC*, 537 F.Supp.3d 1103, 1137 ( S.D. Cal. 2021). Not all false advertising claims, however, sound in fraud. Statements that are untrue or misleading may still violate the FAL even if a defendant did not intend to deceive. Thus, like the CLRA and UCL, courts apply a reasonable consumer test to determine whether members of the public are likely to be deceived by the advertisement. *Consumer Advocs.,* 113 Cal. App. 4th at 1360. FAL claims that are not based in fraud do not necessarily require proof of fraudulent intent or knowledge, although they can include elements of fraud. Here, for the same reasons stated above, Plaintiff has adequately alleged all the elements of an FAL claim.

### D.  Even if Plaintiff's Claims Sounded In Fraud, She Has Adequately Pleaded Claims Under Fed. R. Civ. Proc. 9(b).

Even if the Court were to consider Plaintiff's claims under the heightened pleading standard of Fed. R. Civ. Proc. 9(b), Defendant's Motion should still be denied. Under Rule 9(b), fraud allegations must "be specific enough to give defendants notice of the particular misconduct." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Knowledge and state of mind "may be alleged generally." Fed. R. Civ. P. 9(b). Stating with particularity means identifying "the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Davidson v. Kimberly-Clark Corp.,* 889 F.3d 956, 964 (9th Cir. 2018). As to facts within Defendant's knowledge, Rule 9(b)'s standards are "relaxed" prior to discovery.[4] *In re Gupta Corp. Sec. Litig.*, 900 F.Supp. 1217, 1228 (N.D. Cal. 1994). Similarly, for fraudulent omissions

---

[4] Courts in this Circuit have repeatedly observed that "[a] fraud by omission claim can succeed without the same level of specificity required by a normal fraud claim." *Falk v. Gen. Motors Corp.,* 496 F.Supp.2d 1088, 1099 (N.D. Cal. 2007); *see also Scherer v. FCA US, LLC,* 565 F.Supp.3d 1184, 1189 (S.D. Cal. 2021); *Washington,* 673 F. Supp. 1478, 1482. As such, satisfying the pleading standard of Rule 9(b), "demands that the circumstances constituting the alleged fraud 'be specific enough to give defendants notice of the particular misconduct…so that they can defend against the charge and not just deny that they have done anything wrong.'" *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Bly-Magee v. California,* 236 F.3d 1014, 1019 (9th Cir. 2001)).

1    claims, Rule 9(b) is relaxed because "a plaintiff cannot plead either the specific time of [an]

2    omission or the place, as he is not alleging an act, but a failure to act." *Washington v. Baenziger*,

3    673 F. Supp. 1478, 1482 (N.D. Cal. 1987). Here, Plaintiff has met her burden under both the

4    standard 9(b) pleading requirements and the lower standard for omissions claims.

5        **Who**: "World Market, LLC and Cost Plus World Market, LLC." SAC ¶¶ 12-13.

6        **What**: Defendant "adds mandatory fees on purportedly "oversized" items, charges

7    "handling fees," and charges amounts for shipping that are not the actual cost of shipping. These

8    fees are not disclosed in the advertised prices, "misrepresenting to consumers the total price of the

9    products they intend to buy." *Id.* ¶ 3.

10       **When**: The omissions occurred when Plaintiff "visited the World Market website for the

11   first time, at www.worldmarket.com," on September 9, 2024, "after browsing the internet for

12   furniture, comparing pricing of various retailers for furniture items she was interested in

13   purchasing. ¶¶ 17-18. "On or around September 9, 2024, Plaintiff purchased a set of two Jarle

14   Molded Resin Outdoor Armchairs." *Id.* ¶ 19.

15       **Where**: "At the time of purchase, Plaintiff was a California citizen and resident of Los

16   Angeles County." *Id.* ¶ 11. "World Market's services, including its false advertising, billing and

17   payment for those contested services, were processed in California." *Id.* ¶ 28.

18       **How**: When Plaintiff visited www.worldmarket.com after "browsing the internet for

19   furniture…[and] seeing an advertisement for chairs on the World Market website," the website

20   "listed the price of the chairs as $429.99." *Id.* ¶¶ 17-21. "However, when Plaintiff added the set of

21   chairs to her cart to purchase, an "Oversized Item Surcharge" of $50.00, as well as a "Shipping

22   and Handling" charge of $49.95, were added to the total cost of the items." *Id.* ¶ 22. "Despite its

23   title, the "Shipping and Handling" charge was not the actual cost World Market incurred in

24   shipping the set of chairs to Plaintiff. World Market's "Shipping Methods and Costs" section of

25   their Customer Service Webpage states "Shipping costs are based on the shipping method of

26   choice and the value of the total order along with any applicable surcharges." *Id.* ¶ 25.

27       **What Is False**: Plaintiff alleges that Defendant "[a]dvertis[es] products at a price that does

28   not include all mandatory fees, with the exception of taxes imposed by the government, and

shipping costs incurred in shipping a product to a consumer…" *Id.* ¶ 9. "These hidden fees make it difficult for consumers to compare prices offered by different sites, and consistently results in consumers spending considerably more than they otherwise would." *Id.* ¶ 26.

**Why It Is False**: "In advertising, displaying, and offering its products at a specific price, World Market is representing that consumers are able to purchase the product for the listing price, with the exception of taxes or fees imposed by the government on the transaction, and postage or carriage charges that are incurred in the actual shipping of the product to the consumer. Notwithstanding that representation, the listing price of products that World Market advertises does not include all mandatory fees associated with the product, a misrepresentation that has caused Plaintiff and members of the Class to incur costs in the form of additional fees assigned to these products at checkout." *Id.* ¶ 42.

These allegations are sufficient to satisfy the heightened standard set by Rule 9(b).

### E.  Defendants' Claim That Plaintiff Lacks Standing Is At Odds With Its Claim of Removal Jurisdiction

Defendants' contention that Plaintiff can suffer no cognizable injury under the CLRA, UCL, or FAL because she has not suffered, and cannot suffer, economic loss is at odds with the basis for their removal of this case to federal court. Defendants' Notice of Removal identifies an amount in controversy in excess of $5,000,000. *See* ECF 1 (at pp. 4-7). In this Motion, however, Defendants claim that Plaintiff "lacks standing" because she has suffered *no* economic injury and just "minor inconvenience" (Mot. at 20).

Defendants cannot have it both ways. Though Defendants do not move pursuant to Fed. R. Civ. Proc. 12(b)(1), their Motion amounts to a backdoor challenge on such grounds. This is because if Defendants' theory of damage is correct, Plaintiff would not just lack standing to bring her three consumer protection claims but would also lack Article III standing. If accepted, this Court would consequently lack jurisdiction to hear her claims. While Defendants acknowledge that standing under the UCL can be "more stringent" than standing under Article III, Defendants have nevertheless advanced a theory which, if accepted, would render Plaintiff's claims insufficiently "concrete and particularized" to create Article III jurisdiction. *Spokeo, Inc. v.*

*Robins*, 578 U.S. 330, 339–41 (2016). Defendants' position is that *no* plaintiff will ever be able to satisfy the damage and causation element under Cal. Civ. C. § 1770(a)(29) because the ultimate purchase of any product implicitly means that *the consumer agreed to pay mandatory fees on products that were ultimately shipped*. Even a patent violation of section 1770(a)(29), such as the one here, would be transformed into mere "informational injuries" that the U.S. Supreme Court has found are insufficient to confer Article III standing. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021).

Plaintiff maintains that she has been damaged by Defendants' conduct, and that she has standing under the CLRA, UCL, or FAL, as well as under Article III. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018) ("Under California law, the economic injury of paying a premium for a falsely advertised product is sufficient harm to maintain a cause of action."). However, if the Court were to conclude that Plaintiff's claims involve "mere inconvenience," she should be allowed to pursue her claims in Superior Court and this Court should thus remand Plaintiff's claims rather than dismiss them. *Guzman v. Polaris Industries Inc.*, 49 F.4th 1308 (9th Cir. 2022); *Polo v. Innoventions International, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016). The Court should reject such an extreme outcome, as well as the gamesmanship it engenders.[5]

### F.  Plaintiff Should Be Granted Leave To Amend If Necessary

If the Court determines that Plaintiff needed to add additional allegations to any of her claims, the Court should grant Plaintiff leave to amend the SAC. *Holden v. Fluent, Inc.*, No. 20-CV-03816-JCS, 2020 WL 6822914, at *13 (N.D. Cal. Nov. 20, 2020) (leave should be freely granted when justice requires).

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied in its entirety.

---

[5] *Clevenger v. Welch Foods Inc.*, 2023 WL 2390630, at *5 (C.D. Cal. Mar. 7, 2023) ("a defendant should not be able to avail itself of federal jurisdiction only to turn around and argue that jurisdiction does not exist in order to have the case dismissed.").

Dated: March 14, 2025

OLIVIER & SCHREIBER PC
FINEMAN POLINER LLP

By: */s/ Christian Schreiber*
Christian Schreiber

*Attorneys for Plaintiff
and the Putative Class*

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 3:25-CV-01242-CRB