IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALERIE HARVEY,<br><br>    Plaintiff,<br><br>    v.<br><br>WORLD MARKET, LLC, et al.,<br><br>    Defendants. | Case No. 25-cv-01242-CRB<br><br>**ORDER DENYING MOTION TO DISMISS** |

Valerie Harvey sues World Market, LLC and Cost Plus World Market, LLC, alleging that World Market engaged in a deceptive advertising practice commonly referred to as "drip pricing" by not including certain fees in its listing prices. Harvey brings claims on behalf of herself and all other similarly situated California consumers under three California consumer protection statutes: (1) the Consumer Legal Remedies Act, (2) the Unfair Competition Law, and (3) the False Advertising Law. World Market moves to dismiss Harvey's claims. The Court **DENIES** World Market's motion to dismiss.

**I.    BACKGROUND**

    **A.    Factual Allegations**

Harvey alleges that she purchased a set of armchairs from World Market in September 2024. SAC (dkt. 1-25) ¶ 6. She alleges that World Market advertised the chairs on its website as costing $429.99 but that, after she placed the chairs in her digital shopping cart, World Market added two charges that increased the product's total price: an "Oversized Item Surcharge" for $49.95 and a "Shipping and Handling" charge for $50.00. Id. Harvey alleges that World Market did not include the charges—which, she alleges, do not reflect the actual cost of delivering the chairs—in the product's initially advertised

price. Id. ¶¶ 2, 7. Harvey alleges that, by adding these initially undisclosed fees, World Market engaged in "drip pricing," an unlawful advertising practice. Id. ¶ 2.

Ultimately, Harvey purchased the chairs even after the additional charges were displayed in her digital shopping cart. Id. ¶ 19. Yet she alleges that, had she known of the chairs' actual cost from the outset, she would not have purchased them or would have purchased them from a different website. Id. ¶ 43.

### B. The "Honest Pricing Law"

California's Consumer Legal Remedies Act provides consumers with legal remedies if they are subject to various forms of deceptive advertising. In July 2024, after national attention came to Ticketmaster's practice of charging exorbitant "service fees" for in-demand live events, the California Legislature passed the "Honest Pricing Law," which amended the CLRA to ban a practice known as "drip pricing."[1] Cal. Civ. Code § 1770(a)(29); SB 478 FAQ (dkt. 23-1) at 1. Businesses engage in drip pricing by advertising products at "artificially low headline price[s]" and then disclosing "additional charges later in the buying process." SB 478 Assembly Committee Comments (dkt. 23-4) at 2. In passing the Honest Pricing Law, the California Legislature explained that drip pricing "impose[s] substantial economic harms on consumers and impede[s] the dissemination of important market information." SB 478 Pricing Transparency Comments (dkt. 23-3) at 6. The newest CLRA provision thus prohibits "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges" other than taxes or actually incurred shipping costs.[2] Cal. Civ. Code § 1770(a)(29).

### C. Procedural History

On October 3, 2024, Harvey filed her initial class action complaint in Alameda

---

[1] The Court takes judicial notice of publicly available documents related to Cal. Civ. Code § 1770(a)(29)'s legislative history. See Aramark Facility Servs. v. Service Employees International Union, Local 1877, 530 F.3d 817, 826 n.4 (9th Cir. 2008).

[2] Section 1770(a)(29)'s legislative history explicitly states that the bill is designed to prohibit drip pricing in all industries, rather than solely in the context of ticket pricing. SB 478 FAQ at 1. As the Legislature explained, the law "applies to event tickets, short-term rentals, hotels, restaurants, and food delivery, just to name a few prominent industries." Id.

2

1  County Superior Court, bringing a claim under the newly added provision of the CLRA,
2  section 1770(a)(29), as well as claims under California's Unfair Competition Law and
3  False Advertising Law.  Compl. (dkt. 1-3).  Harvey's claims are essentially fraudulent
4  omission claims; they are based on World Market's allegedly misleading price displays,
5  which she says omit certain fees.  See SAC ¶¶ 52, 54 (alleging that World Market
6  "intended to … mislead and deceive" consumers by omitting certain fees in its listing
7  prices).  As far as the Court is aware, both from the parties' briefs and the Court's own
8  research, this is one of the first section 1770(a)(29) cases to reach a merits-stage inquiry.

9  World Market removed the case to federal court and now moves to dismiss under
10 Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can
11 be granted.

## II. LEGAL STANDARD

Dismissal under Rule 12(b)(6) may be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019) (cleaned up).  A complaint must plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (cleaned up).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  When evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).  "Courts must consider the complaint in its entirety" and may also consider "documents incorporated into the complaint by reference[] and matters of which a court may take judicial notice."  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

Because Harvey's claims "are premised on misleading advertising or labeling," Watkins v. MGA Ent. Inc., 550 F. Supp. 3d 815, 833 (N.D. Cal. 2021), they "sound in fraud" and must meet the heightened pleading standard of Rule 9(b) of the Federal Rules

of Civil Procedure. Fed. R. Civ. P. 9(b); see SAC ¶¶ 45, 52 (alleging that World Market engaged in a "course of conduct" that was "intended to … mislead and deceive" consumers). Under Rule 9(b), the party alleging fraud "must state with particularity the circumstances constituting fraud or mistake," though "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9(b) demands that supporting allegations "be 'specific enough to give defendants notice of the particular misconduct … so that they can defend against the charge and not just deny that they have done anything wrong.'" Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation omitted). Thus, "averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).

## III. DISCUSSION

World Market makes two arguments in favor of dismissing Harvey's complaint. First, World Market argues that Harvey lacks statutory standing for all three of her claims. Mot. (dkt. 10) at 11, 19. Second, World Market contends that Harvey fails to state a claim under Cal. Civ. Code § 1770(a)(29). Id. at 10. The Court concludes that Harvey has standing to bring her claims and that she has stated a claim under section 1770(a)(29).

### A. Lack of Standing

World Market contends that Harvey fails to sufficiently allege two elements that are necessary to establish standing under the CLRA, UCL, and FAL: reliance and harm. Mot. at 11.

#### 1. Reliance

To proceed on a "fraudulent omission" claim under the three statutes, a plaintiff must allege that she relied on the defendant's alleged omission. Daniel v. Ford Motor Co., 806 F.3d 1217, 1225 (9th Cir. 2015) (CLRA); Moore v. Mars Petcare US, Inc., 966 F.3d 1007, 1020 (9th Cir. 2020) (UCL and FAL). In particular, a plaintiff must allege that, "had the omitted information been disclosed, [she] would have been aware of it and behaved differently." Daniel, 806 F.3d at 1225. The Court may presume reliance if the omission is

"material," meaning that "a reasonable consumer 'would attach importance to its existence or nonexistence in determining [her] choice of action in the transaction in question.'" Id. Whether an omitted fact is material is "generally a question of fact" unsuitable for resolution on the pleadings. Id. at 1226.

World Market argues that Harvey lacks standing to bring her three state law claims because she does not plausibly allege that she relied on any misleading advertising practice in completing her transaction. Mot. at 11. World Market asserts that Harvey's "conclusory allegation" that she would not have purchased the product in question had World Market initially displayed the product's total price is insufficient to establish actual reliance. Id. at 14.

Given the lack of cases interpreting section 1770(a)(29), World Market analogizes to a slew of cases interpreting other provisions of the CLRA. See Charbonnet v. Omni Hotels & Resorts, No. 20-cv-01777-CAB-DEB, 2020 WL 7385828 (S.D. Cal. Dec. 16, 2020) (Cal. Civ. Code §§ 1770(a)(5), 1770(a)(7), and 1770(a)(9)); Hall v. Marriott Int'l, Inc., 344 F.R.D. 247 (S.D. Cal. 2023) (a previous version of the CLRA); Imber-Gluck v. Google, Inc., No. 5-14-cv-01070-RMW, 2014 WL 3600506 (N.D. Cal. July 21, 2014) (Cal. Civ. Code §§ 1770(a)(5), 1770(a)(7), and 1770(a)(14)).[3] For example, in Charbonnet, World Market's most factually analogous citation, a plaintiff alleged that "she was 'lured into Omni's artificially lowered rate' for a hotel room, and 'the property fee was not revealed until after the false price was first represented.'" 2020 WL 7385828, at *3 (citations omitted) (cleaned up). In that case, the court dismissed the plaintiff's claims and concluded that "[t]he fact that Plaintiff completed her reservation and paid the higher

---

[3] Section 1770(a)(5) prohibits "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have." Section 1770(a)(7) prohibits "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Section 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised." Section 1770(a)(14) prohibits "representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law."

total price, knowing it was more than the advertised daily rate, shows that the addition of taxes and fees ultimately had no effect on her decision to book a room there." Id. at *5. And in Hall—another case involving hotel fees—the court rejected the plaintiffs' "bait-and-switch" theory, explaining that "[a]ny consumer's perception that the price reflected on the first page of Marriott's booking process constituted the total price is quickly and explicitly dispelled at every other page in the booking process." 344 F.R.D. at 266. World Market contends that Harvey's decision to proceed with her purchase after learning of the product's total cost likewise precludes her from plausibly alleging that she relied on the initially advertised price. Mot. at 15.

Though the facts in Charbonnet and Hall are facially similar to the facts in this case, the reasoning of those courts regarding reliance is inapplicable in light of the Honest Pricing Law, which added the CLRA provision at issue in this case—section 1770(a)(29). Indeed, applying the Charbonnet and Hall courts' reasoning to section 1770(a)(29) would undermine the very purpose of that provision. The provision's drafters explained that the statute was designed to "combat … bait-and-switch advertising" (the theory of liability rejected in Hall) by prohibiting scenarios akin to what happened here. SB 478 Comments (dkt. 23-6) at 1, 4. For instance, the drafters envisioned a scenario where "[y]ou carefully select tickets to a concert or a sporting event, ones that allow you and your friends to sit together; then a 'service charge' is displayed on the payment page, blowing the group's budget." Id. at 1. But the reasoning of Charbonnet and Hall would undermine these ticket buyers' case too: if they were to proceed with their purchase to avoid losing out on the tickets and then later sue under section 1770(a)(29), the ticket provider could argue (like World Market does here) that the buyers' decision to move forward with their purchase "shows that the addition of [the] ... fees ultimately had no effect on [their] decision." See 2020 WL 7385828, at *5. At this early stage of litigation, it would be inappropriate for the Court to hypothesize about the availability of alternatives or other factual circumstances surrounding the transaction, and so Harvey's purchase of armchairs from World Market does not appear meaningfully different than a group of friends' purchase of concert tickets.

1  So the Court declines to adopt the reasoning of Charbonnet and Hall in this case, as doing
2  so would be irreconcilable with the Legislature's intent in passing the Honest Pricing Law.
3  World Market's proposed interpretation of section 1770(a)(29) would also create a
4  catch-22 for consumers seeking to enforce the CLRA's newest provision.  When a
5  business engages in drip pricing, consumers are left with two choices: they can proceed
6  with their purchase after discovering the initially undisclosed fees or decide not to buy the
7  product they wanted.  In either scenario, as World Market's own briefs illustrate, the
8  business could argue that those consumers do not have statutory standing to recover under
9  section 1770(a)(29).  In the former situation the consumers would arguably lack reliance
10 (having purchased the product after learning of added fees), while in the latter they would
11 arguably lack damages (having incurred no expense at all).[4]  Surely the Legislature did not
12 pass a law with no practical effect—especially given the overarching purpose of the
13 CLRA.  See Los Coyotes Band of Cahuilla & Cupeno Indians v. Jewell, 729 F.3d 1025,
14 1036 (9th Cir. 2013) ("courts should avoid interpreting a statute in a way that renders a
15 provision meaningless") (citation omitted).
16 Thus, the Court concludes that reliance is presumed in section 1770(a)(29) claims—
17 at least at the pleading stage for purposes of assessing a plaintiff's statutory standing—in
18 circumstances where a product is advertised at a price that does not include all mandatory
19 charges (other than taxes and shipping fees) "that will be reasonably and actually

---

[4] At oral argument, World Market cited Veera v. Banana Republic, LLC as an example of a scenario where a class of plaintiffs did allege a cognizable claim under section 1770(a)(29).  In Veera, the plaintiffs alleged that the defendant falsely advertised products as being on sale, which led them to enter the defendant's store, select certain items, and stand in a check-out line, only to learn that the sale did not apply to those items.  6 Cal. App. 5th 907, 920 (2016).  Like Harvey, the plaintiffs purchased the items after learning of their actual prices.  Id.  The court denied the defendant's motion for summary judgment, holding that "there [was] a triable issue whether plaintiffs' reliance on the allegedly misleading advertising was a cause … of their economic harm."  Id.  World Market asserts that the time the Veera plaintiffs spent standing in line is a key distinction with this case and argues that to plausibly allege reliance, Harvey must allege that she was similarly "invested in the decision to buy and swept up" in her transaction.  See id. at 921.  But that language from Veera does not appear to be a new test for establishing reliance under the CLRA—and even if it is, whether Harvey felt pressure to purchase World Market's armchairs is a factual question that the Court cannot determine on the pleadings.

7

incurred." Cal. Civ. Code § 1770(a)(29). Ninth Circuit precedent supports this approach. In Hinojos v. Kohl's Corp. the court explained that "the legislature's decision to prohibit a particular misleading advertising practice is evidence that the legislature has deemed that the practice constitutes a 'material' misrepresentation, and courts must defer to that determination." 718 F.3d 1098, 1104 (9th Cir. 2013); see also Daniel, 806 F.3d at 1225 (holding that reliance "can be presumed, or at least inferred" where the omission in question is material); Moore, 966 F.3d at 1021 ("at the motion to dismiss stage, 'actual reliance ... is inferred from the misrepresentation of a material fact'") (citation omitted)). Presuming reliance is also consistent with the CLRA's purpose: "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Lytle v. Nutramax Labs., Inc., 114 F.4th 1011, 1038 (9th Cir. 2024) (citation omitted).

    World Market acknowledges that reliance can be presumed where an allegedly fraudulent omission is material but contends that reliance cannot be presumed in this case because "Harvey's decision to complete the transaction with full knowledge of [the initially undisclosed] charges conclusively establishes that those charges were immaterial to her purchasing decision." Reply (dkt. 24) at 6. In making this argument, World Market misses the forest for the trees. Whether a fraudulent omission is material is an objective question assessed from the standpoint of a reasonable consumer. Daniel, 806 F.3d at 1225. By contrast, whether an individual consumer subjectively relied on that omission in a particular instance is a factual question unsuitable for resolution on the pleadings—though it may become relevant at a later stage of litigation. See Moore, 966 F.3d at 1021. That Harvey decided to complete the transaction after discovering the initially undisclosed fees is therefore irrelevant to determining whether a reasonable consumer would find those fees to be material.

    The Court therefore presumes Harvey's reliance on World Market's allegedly misleading advertising for purposes of this motion, satisfying that requirement of her CLRA claim. And because her claims under the UCL and FAL are premised on the

alleged section 1770(a)(29) violation, Harvey has also sufficiently alleged reliance under those statutes. See Moore, 966 F.3d at 1020.

That all said, World Market's argument as to Harvey's reliance specifically is not lost on the Court. If Harvey did not in fact rely on the initial display price of the chairs, that would defeat the presumption of reliance, thereby dooming her claim (and, for purposes of this case, making her an inadequate class representative). See Lytle, 114 F.4th at 1019, 1035 (recognizing that "the presumption of reliance is rebuttable" and that class certification may not be appropriate if the allegedly deceptive marketing practice was "not material as to all class members") (citation omitted)). Accordingly, the Court will instruct the parties to begin discovery with a limited inquiry into Harvey's reliance and will permit an early motion for summary judgment on those grounds if appropriate.

### 2. Damage

World Market also argues that Harvey lacks standing under the CLRA, UCL, and FAL because she fails to allege damages. Mot. at 8. To establish standing under the UCL and FAL, a plaintiff must allege that she "lost money or property ... as a result of [her] transactions with the defendant." Hinojos, 718 F.3d at 1104. Under the CLRA, a plaintiff can satisfy the damages requirement by alleging that she suffered "any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by [s]ection 1770." Id. at 1107. The CLRA's "'any damage' requirement is a capacious one that includes any pecuniary damage as well as opportunity costs and transaction costs," so "any plaintiff who has standing under the UCL's and FAL's 'lost money or property' requirement will ... have suffered 'any damage' for purposes of establishing CLRA standing." Id. at 1108.

World Market contends that Harvey cannot plausibly allege that she was harmed "by knowingly paying for a product ... that she, in fact, receive[d]." Mot. at 12. To be sure, a plaintiff does not suffer a cognizable injury where she spends money but "receives the benefit of the bargain" in exchange. See Warner v. Tinder Inc., 105 F. Supp. 3d 1083, 1094–95 (C.D. Cal. 2015) ("being induced to purchase a product one would not otherwise

have purchased is not loss of money or property within the meaning of the [UCL or FAL] as long as one still receives the benefit of the bargain"); Hall v. Time Inc., 158 Cal. App. 4th 847, 855 (2008) (holding that a plaintiff had not alleged an injury in fact under the UCL where he "expended money ... but he received a book in exchange" and "did not allege he did not want the book, the book was unsatisfactory, or the book was worth less than what he paid for it"). World Market correctly points out that Harvey "does not claim to have been dissatisfied with her purchase" and thus it argues that she did not suffer any harm under the meaning of the CLRA, the UCL, or the FAL. Mot. at 12.

But World Market's argument does not fit this case, where the asserted economic injury comes in the form of fees above and beyond the cost of the product itself. Indeed, faced with a plaintiff's allegations that a defendant falsely advertised goods as being substantially discounted when they had never been sold at the purported original price, the Ninth Circuit rejected a similar "benefit of the bargain" defense. Hinojos, 718 F.3d at 1102, 1107. The Ninth Circuit held that the plaintiff had sufficiently alleged an economic injury by alleging that the defendant "made material misrepresentations that induced him to buy products he would not otherwise have purchased." Id. at 1107. The court explained that the "material misrepresentations" in question related solely to the defendant's allegedly deceptive pricing scheme, rather than the condition or nature of the defendant's products. Id. The court therefore did not need to consider whether the plaintiff was satisfied with the products in reaching its conclusion.

World Market's "benefit of the bargain" argument is also inconsistent with section 1770(a)(29)'s legislative history. The Legislature's comments clarify that "junk fees impose substantial economic harms on consumers and impede the dissemination of important market information." SB 478 Pricing Transparency Comments at 6. This statement highlights the Legislature's belief that consumers are economically harmed (and thus have standing even under the more stringent UCL and FAL standard) whenever they pay fees that are not included in a product's initially advertised price, regardless of the consumer's satisfaction with the product itself. Id. Whether World Market's charges

10

were, in fact, "junk fees" within the meaning of section 1770(a)(29)—that is, whether they were fees in excess of the costs that World Market actually incurred—is a question of fact not suitable for resolution on the pleadings. See City of Oakland v. BP PLC, 969 F.3d 895, 910 (9th Cir. 2020) ("The purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of a claim for relief; the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case.") (cleaned up).

Because Harvey has plausibly alleged that she lost "money or property" under the UCL and FAL's test, she has also satisfied the CLRA's "any damage" standard.

### B.   Failure to State a Claim Under Cal. Civ. Code § 1770(a)(29)

World Market also argues that Harvey fails to state a claim under the CLRA. Mot. at 10–11. World Market contends that Harvey's CLRA claim should be dismissed because she does not allege with particularity any facts indicating that World Market violated section 1770(a)(29). Id. World Market emphasizes that section 1770(a)(29) does not require companies to include "[p]ostage or carriage charges that will be reasonably and actually incurred to ship the physical goods to the consumer" in a product's initially advertised price. Id. at 11 (citing Cal. Civ. Code. § 1770(a)(29)(A)(ii)). World Market contends that Harvey provides no factual support for her "conclusory allegation" that World Market did not actually incur the fees it charged her. Id.

But Harvey has adequately alleged that World Market does not actually incur the shipping fees it charges. She alleges that those fees are "based upon the sale price" of World Market's products and that under World Market's policy "a 3-pound item that sells for $50 would incur a shipping cost far less than a 3-pound item that sells for $500."[5] Opp. (dkt. 22) at 11 (citing SAC ¶ 53). Taken as true, Harvey's allegations are sufficient to state a claim—even under Rule 9(b)—because the Court can infer that World Market's

---

[5] World Market argues that a shipping policy "based upon the sale price of a product" may still reflect a company's actual shipping costs, Mot. at 11, but that presents a factual question that cannot be resolved on the pleadings.

purported shipping costs are not "actually incurred." See Cal. Civ. Code § 1770(a)(29)(A)(ii). "The purpose of Rule 9(b) is to ensure that the defendant has enough information (the who, what, when, where, and how of the claimed fraud) so that 'a defendant can prepare an adequate answer from the allegations.'" Caldwell v. Nordic Naturals, Inc., 709 F. Supp. 3d 889, 904 (N.D. Cal. 2024) (citation omitted). Harvey alleges that World Market (the "who") advertises products at artificially low prices before adding fees that exceed the products' true value (the "what"). SAC ¶¶ 3, 12, 13. She alleges that she encountered this deceptive advertising practice in September 2024 (the "when") in California (the "where"). Id. ¶¶ 19, 28. And she alleges that World Market charges shipping fees "based upon the sale price of the product[s]" in question instead of the costs World Market actually incurs (the "how"). Id. ¶¶ 25, 28. Harvey thus satisfied Rule 9(b)'s standard in that she "provide[d] notice … of the specific fraudulent conduct" that World Market must defend against. Bly-Magee, 236 F.3d at 1018. She has therefore stated a claim upon which relief can be granted.

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** World Market's motion to dismiss. The Court instructs the parties to conduct limited factual discovery, within 60 days, confined to the following question: Did Harvey actually rely on the initial display price of the chairs that she purchased from World Market when she purchased them? All other discovery is stayed while discovery on this issue is ongoing. And if based on this initial discovery World Market believes that there is no genuine dispute of fact as to Harvey's reliance, World Market may file an early summary judgment motion with respect to that issue (which would of course be without prejudice as to any subsequent summary judgment motion after full discovery).

**IT IS SO ORDERED.**

Dated: May 9, 2025

CHARLES R. BREYER
United States District Judge