Bryan Cave Leighton Paisner LLP
Daniel T. Rockey, Bar No. 178604
daniel.rockey@bclplaw.com
Merrit M. Jones, Bar No. 209033
merrit.jones@bclplaw.com
Anna V. Donald, Bar No. 352006
Anna.donald@bclplaw.com
Three Embarcadero Center, 7th Floor
San Francisco, California 94111-4070
Telephone:    +1 415 675 3400
Facsimile:    +1 415 675 3434

Attorneys for Defendant
WORLD MARKET, LLC,
COST PLUS WORLD MARKET, LLC

UNITED STATE DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALERIE HARVEY, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WORLD MARKET, LLC, COST PLUS WORLD MARKET, LLC and DOES 1-100, inclusive,<br><br>Defendants. | Case No. 3:25-cv-01242-CRB<br><br>**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AS TO RELIANCE; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed concurrently with Declaration of Holly Bauer, Declaration of Anna Donald, and [Proposed] Order]<br><br>Hon. Judge Charles Breyer<br><br>Date: February 6, 2025<br>Time: 10:00 AM<br>Courtroom: 6, 17th Fl |

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

NOT. OF MOT. AND MOT. FOR SUMM. JUDGMENT - CASE NO. 3:25-CV-01242-CRB

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 6, 2026, at 10:00 a.m., in Courtroom 6 of the above-captioned court, located at 450 Golden Gate Avenue in San Francisco, California, Defendants World Market, LLC and Cost Plus World Market, LLC (together, "World Market") will, and hereby do, move for summary judgment pursuant to Federal Rule of Civil Procedure 56, and this Court's Order Denying Motion to Dismiss [Doc 28] authorizing World Market to submit an early summary judgment motion limited to the issue of reliance.

World Market moves for summary judgment/adjudication as to each of the claims asserted in the Second Amended Class Action Complaint for Damages ("SAC") on the grounds that Plaintiff has not, and cannot, establish that she relied upon the initial display price of the Jarle Molded Resin Outdoor Chairs in completing her purchase. As reliance is an essential element of Plaintiff's claims for violation of Civil Code § 1770(a)(29)(A) of the Consumer Legal Remedies Act ("CLRA"), the Unfair Competition Law ("UCL"), Bus. & Prof. Code 17200, *et seq.*, and the False Advertising Law ("FAL"), Bus. & Prof. Code 17500, *et seq.*, World Market is entitled to judgment as to each such claim.

This Motion is based on this Notice and Memorandum of Points and Authorities, the concurrently filed Declarations of Holly Bauer and Anna Donald, and exhibits attached thereto, the records on file in this case, and any argument by counsel at the hearing on this matter.

Dated: December 12, 2025

**BRYAN CAVE LEIGHTON PAISNER LLP**

By: _____
     Daniel T. Rockey
     Merrit M. Jones
     Anna V. Donald

Attorneys for Defendants
World Market, LLC, Cost Plus World Market, LLC

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     UNDISPUTED MATERIAL FACTS ................................................................ 2

    A.      Harvey Begins Looking for Patio Chairs ................................................ 2

    B.      Harvey Switches Gears to Search for Something Local and Lands on World Market's Homepage ...................................................................... 4

    C.      Harvey Pauses to Contemplate Whether to Complete Her Purchase ...................... 6

III.    ARGUMENT ..................................................................................................... 9

    A.      World Market Can Meet Its Burden by Showing Either that Harvey Did Not Rely on the Display Price in Completing Her Purchase or the Absence of Evidence of Reliance ............................................................ 9

    B.      Reliance Is an Essential Element of Each of Harvey's Claims ............................. 10

    C.      The Presumption of Reliance Is Rebutted by the Undisputed Facts ...................... 12

        1.      To establish reliance, Harvey must prove that she relied *to her detriment* on the initial display price and thereby *altered her legal relations* .............................................................................. 12

        2.      Harvey did not rely on the initial display price in completing her transaction ..................................................................................... 15

    D.      Grant of Summary Judgment Here Is Required by Law and Is Consistent with Legislative Intent ......................................................... 19

        1.      The Legislature Is Presumed to Have Been Aware of Prior CLRA Decisions Requiring a Showing of Reliance and Damage ............. 19

        2.      Section 1770(a)(29) Is Not *Sui Generis* .................................... 20

        3.      Construing subsection (a)(29) *in pari materia* with the broader CLRA statutory scheme would not render the new provision of no practical effect .............................................................................. 23

IV.     CONCLUSION ................................................................................................ 25

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Astiana v. Kashi Co.*,
91 F.R.D. 493 (S.D. Cal. 2013) .................................................................................... 13

*In re B.L.*,
204 Cal. App. 4th 1111 (2012) ..................................................................................... 25

*Berry v. American Express Publishing, Inc.*,
147 Cal. App. 4th 224 (2007) ....................................................................................... 25

*Beyer v. Symantec Corporation*,
333 F. Supp. 3d 966 (N.D. Cal. 2018) ......................................................................... 20

*Big Creek Lumber Co. v. County of Santa Cruz*,
38 Cal. 4th 1139 (2006), *as modified* (Aug. 30, 2006) ............................................... 20

*Buckland v. Threshold Enterprises, Ltd.*,
155 Cal. App. 4th 798 (2007), *as modified* (Oct. 22, 2007) ...................................... 13

*C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*,
213 F.3d 474 (9th Cir. 2000) ........................................................................................ 10

*California v. IntelliGender, LLC*,
771 F.3d 1169 (9th Cir. 2014) ...................................................................................... 24

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ...................................................................................................... 10

*Charbonnet v. Omni Hotels & Resorts*,
2020 WL 7385828 (S.D. Cal. Dec. 16, 2020) ....................................................... *passim*

*Daniel v. Ford Motor Co.*,
806 F.3d 1217 (9th Cir. 2015) ...................................................................................... 11

*Durell v. Sharp Healthcare*,
183 Cal. App. 4th 1350 (2010) ..................................................................................... 13

*Engalla v. Permanente Medical Group, Inc.*,
15 Cal. 4th 951 (1997), *as modified* (July 30, 1997) ............................................ 13, 14

*I.B. ex rel. Fife v. Facebook, Inc.*,
905 F. Supp. 2d 989 (N.D. Cal. 2012) ......................................................................... 25

*Freeman v. Time, Inc.*,
68 F.3d 285 (9th Cir. 1995) ..................................................................................... 20, 22

*Hall v. Marriott Int'l, Inc.*,
344 F.R.D. 247 (S.D. Cal. 2023) .................................................................................. 19

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

ii

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

*Hall v. Time Inc.*,
  158 Cal. App. 4th 847 (2008), *as modified*, 158 Cal. App. 4th (Jan. 28, 2008)...............*passim*

*Hamm v. Mercedes-Benz USA, LLC*,
  2023 WL 4186013 (N.D. Cal., June 23, 2023) .................................................................... 12

*Kurin, Inc. v. Magnolia Medical Technologies, Inc.*,
  473 F. Supp. 3d 1117 (S.D. Cal. 2020), *aff'd in part, appeal dismissed in part*)
  2021 WL 5823707 (9th Cir., Dec. 8, 2021 .......................................................................... 9

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011).................................................................................................. 13, 23

*Laster v. T-Mobile USA, Inc.*,
  407 F. Supp. 2d 1181 (S.D. Cal. 2005), *aff'd* 252 Fed.Appx. 777 (9th Cir. 2007).................. 14

*Lytle v. Nutramax Laboratories, Inc.*,
  114 F.4th 1011 (9th Cir. 2024), *cert. denied* (2025) 145 S.Ct. 1308 ...................................... 12

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ......................................................................................................... 10

*Meyer v. Sprint Spectrum L.P.*,
  45 Cal. 4th 634 (2009).................................................................................................... 13

*Mirkin v. Wasserman*,
  5 Cal. 4th 1082 (1993)..................................................................................................... 13

*Moore v. Mars Petcare US, Inc.*,
  966 F.3d 1007 (9th Cir. 2020)........................................................................................... 11

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*,
  210 F.3d 1099 (9th Cir. 2000)........................................................................................... 10

*Noll v. eBay Inc.*,
  2013 WL 2384250 (N.D. Cal., May 30, 2013) .................................................................... 20

*People v. Leahy*,
  8 Cal. 4th 587 (1994)....................................................................................................... 20

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009)..................................................................................................... 23

*Tomek v. Apple, Inc.*,
  2012 WL 2857035 (E.D. Cal., July 11, 2012) .................................................................... 20

*Veera v. Banana Republic, LLC*,
  6 Cal. App. 5th 907 (2016)........................................................................................... 14, 24

*Victor v. R.C. Bigelow, Inc.*,
  2014 WL 1028881 (N.D. Cal. Mar. 14, 2014) .................................................................... 13

*Watkins v. MGA Ent. Inc.*,
  550 F. Supp. 3d 815 (N.D. Cal. 2021) .............................................................................. 11

iii

*Watson v. Crumbl LLC*,
    736 F. Supp. 3d 827 (E.D. Cal. 2024) .................................................................................. 24

*White v. Ultramar, Inc.*,
    21 Cal. 4th 563 (1999)......................................................................................................... 20

**Statutes**

Business and Professions Code............................................................................................... 22

California Civil Code § 1770 .........................................................................................*passim*

California Civil Code § 1780 ..................................................................................... 12, 21, 22

California Civil Code § 1781 ................................................................................................... 22

Consumer Legal Remedies Act......................................................................................*passim*

False Advertising Law ..................................................................................................... 1, 22

Honest Pricing Law................................................................................................................. 19

Privacy Act § 637.2................................................................................................................. 22

Unfair Competition Law ..................................................................................................... 1, 22

**Other Authorities**

Federal Code of Civil Procedure 56(a), (c)(1) ...................................................................... 11

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

iv

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

## I.    INTRODUCTION

Plaintiff Valerie Harvey noticed that her patio "was looking bare" and decided to find some patio furniture.[1] She spent a half hour or so searching the websites of several other retailers before landing on World Market's homepage at www.worldmarket.com,[2] where she browsed for about twenty minutes before settling on a set of Jarle Molded Resin Outdoor Chairs ("Jarle Chairs") and placed them in her Cart. When she opened her Cart she saw that for large, bulky items like furniture, World Market would charge her a flat $49.95 for shipping and handling and a $50 oversized item surcharge to cover the costs of delivery. She paused for about six minutes "contemplating" whether to incur the charges, but "decided to go ahead with the purchase" and "understood at that point that, if [she] went ahead with the purchase, [she] would pay the oversized item surcharge and the shipping charges."[3] She completed the transaction, the chairs were delivered, and she was happy with her purchase.

So why are we here? Harvey contends that by disclosing the shipping and handling and oversized item charges when she opened her Cart, rather than rolling them into the cost of the items, World Market ran afoul of Civil Code § 1770(a)(29)(A), a provision recently added to the Consumer Legal Remedies Act ("CLRA"), which prohibits "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges," with exceptions. She also asserts claims under the Unfair Competition Law (Bus & Prof. Code s 17200 *et seq.*) and False Advertising Law (Bus & Prof. Code s 17500 *et seq.*) on the same theory.

World Market moved to dismiss the Second Amended Complaint ("SAC") on the grounds, *inter alia*, that Harvey must allege that she relied on the absence of the shipping and handling and oversized item charges in completing her purchase, which she cannot do because the charges were clearly and conspicuously disclosed when she placed the items in her Cart and each step of the checkout process thereafter. The Court denied the motion, holding that "reliance is

---

[1] *See* Declaration of Anna Donald in Support of Defendants' Motion for Summary Judgment as to Reliance ("Donald Decl."), Ex. I, 7/8/25 Deposition of Valerie Harvey ("Harvey Dep.") at 12:1-3.
[2] Defendants World Market, LLC and Cost Plus World Market, LLC (together, "World Market")
[3] *Id.*, 57:4-58:3.

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

presumed in section 1770(a)(29) claims—at least at the pleading stage."[4] At the same time, the Court acknowledged that "World Market's argument as to Harvey's reliance specifically is not lost on the Court," and stated that "[i]f Harvey did not in fact rely on the initial display price of the chairs, that would defeat the presumption of reliance, thereby dooming her claim…."[5] With that in mind, the Court instructed the parties to conduct discovery "confined to the following question: Did Harvey actually rely on the initial display price of the chairs that she purchased from World Market when she purchased them?"[6] The Court further ordered that "[i]f based on this initial discovery World Market believes that there is no genuine dispute of fact as to Harvey's reliance, World Market may file an early summary judgment motion with respect to that issue."[7]

That Court-ordered discovery is now complete and establishes conclusively that Harvey did not "actually rely on the initial display price of the chairs that she purchased from World Market when she purchased them." On the undisputed facts here, reliance is conclusively negated and World Market is entitled to summary judgment.

## II.    UNDISPUTED MATERIAL FACTS
### A.    Harvey Begins Looking for Patio Chairs

In late August 2024, Harvey decided to look for some outdoor furniture. Donald Decl., Ex. I, Harvey Dep. at 11:22-25. She began her search about a week later, at 1:20 AM and 48 seconds on the morning of September 9, 2024, when she ran a Google search for "patio furniture," as shown in the below excerpt from her browser history:

| Internet History | |
|---|---|
| Source Device | SOURCEID_11853_–_Valerie_Harper_–_MacBook_Pro.sparseimage/Macintosh HD – Data |
| Path | /Users/valharvey/Library/Safari/History.db |
| Browser | Safari |
| LogType | History |
| PrimaryKey | https://www.google.com/search?client=safari&rls=en&q=patio+furniture&ie=UTF-8&oe=UTF-8 |
| URL | https://www.google.com/search?client=safari&rls=en&q=patio+furniture&ie=UTF-8&oe=UTF-8 |
| Title | patio furniture – Google Search |
| LastVisit | 2024–09–09 01:20:48 (PDT) |
| DateVisited | 2024–09–09 01:20:48 (PDT) |
| VisitCount | 3 |
| VisitType | Local Device |
| Profile | valharvey |
| Source File | /Users/valharvey/Library/Safari/History.db |

---

[4] ECF No. 28, Order Denying Motion to Dismiss ("Order"), at 7:16-17.
[5] Id. at 9:3-4 (underline in original).
[6] Id. at 12:17-18.
[7] Id. at 12:20-23.

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

Donald Decl., Ex. J, Exhibit 4 to Harvey Dep. ("Browser History"), at PLTF 007-008.[8] At 1:21:20 AM, Harvey spent about seven minutes browsing "outdoor furniture" on Ikea.com. *Id*. at PLTF 008-014 (showing Harvey visited several product pages on Ikea website from 1:21:20 AM to 1:28:14 AM).[9] Harvey next visited Wayfair.com, where she spent another seven minutes browsing for outdoor furniture. *Id*. at PLTF 015-023 (interacting with the Wayfair website from 1:28:37 AM to 1:34:50 AM). Harvey jumped to Target.com at 1:35:35 AM and browsed for outdoor furniture for approximately three minutes. *Id*. at PLTF 023-027 (interacting with the Target website from 1:35:35 AM to 1:38:16 AM).

At 1:39:06, Harvey ran a new Google search for "patio chairs." *Id*. at PLTF 027-028. At 1:39:17, Harvey clicked on Amazon.com, where she browsed for outdoor furniture for approximately one minute. *Id*. at PLTF 028-031 (interacting with the Amazon website from 1:39:17 to 1:39:37). At 1:40:15 AM, Harvey returned to Wayfair.com, looked at a "Wade Logan Isaacson Outdoor Patio Chair," a "Beachcrest Home Prachi Patio Chair," and "Highland Dunes Mcclurg Outdoor Patio Chair," before clicking on a page with the URL www.Wayfair.com/help/article/shipping_information. *Id*. at PLTF 032-034; *id*., Ex. I, Harvey Dep. at 40:1-11. Although Harvey initially claimed not to recall whether she reached the Wayfair shipping information help page on purpose, immediately after that she performed a search on Wayfair's website using the terms "shipping information." *Id*., Ex. J, Browser History at PLTF 035; *id*., Ex. I, Harvey Dep. at 40:15-41:6. Harvey claimed not to recall whether she was concerned about shipping costs for the furniture, but offered no explanation as to why else she

---

[8] On July 3, 2025, Plaintiff produced two sets of data in response to Defendants' Requests for Production of Documents, Set One, relating to Plaintiff's cell phone and laptop search history leading to her purchase of the Jarle Chairs. On November 11, 2025, World Market deposed Plaintiff's forensic analyst, Andreas Mueller, who's company extracted the data. Donald Decl., Ex. K, 11/11/25 Deposition of Andreas Mueller ("Mueller Dep.") at 12:5-23. During his deposition, Mr. Mueller confirmed the activities performed to extract the data as well as how to interpret the data produced. *Id*. at 60:2-61:5 (explaining search history and that display "Title" followed by "patio furniture – Google Search" reflect that the user conducted a Google search using the exact phrase "patio furniture"), *id*. at 61:6-12 (explaining that "LastVisited" represents "the last time this particular search was executed in Pacific Daytime), *id*. at 61:13-62:1 (explaining that "DateVisited" represents "the particular data and time when this Google search was executed"); *see also id*. at 62:20-63:13 (explaining how to interpret that data for entries reflecting website browsing).

[9] At one point, Harvey inadvertently ended up browsing Ikea Switzerland's website before returning the US version of the website. Donald Decl., Ex. J, Browser History at PLTF 010–013.

3

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

would have conducted such a search. Donald Decl., Ex. I, Harvey Dep. at 41:4-14.

In total, Harvey spent approximately twenty-two minutes that morning, from 1:20:48 AM until 1:42:29 AM, conducting Google searches and browsing for patio furniture on the aforementioned sites. *Id.*, Ex. J, Browser History at PLTF 007-008 ("patio furniture" Google search); *id.* at PLTF 008-014 (IKEA); *id.* PLTF 013 ("ikea usa" Google search); *id.* at PLTF 015-023, 031-035 (Wayfair); *id.* at PLTF 023-027, 035 (Target); *id.* PLTF 027-028, 035 ("patio chairs" Google search); *id.* at PLTF 028-031 (Amazon).

### B. Harvey Switches Gears to Search for Something Local and Lands on World Market's Homepage

Later that afternoon, at 1:49:45 PM, Harvey returned to Target.com and spent a few minutes shopping for a new dress. *Id.* at PLTF 036; *id.*, Ex. I, Harvey Dep. at 43:6-19. After that, Harvey resumed her search for patio furniture, this time looking "see if there was anything local" by running a Google search for "patio furniture los angeles." *Id.*, Ex. I, Harvey Dep. at 43:23-44:22; *id.*, Ex. J, Browser History at PLTF 036-038. She browsed www.patioworld.net for about two minutes (*id.*, Ex. J, Browser History at PLTF 038) and www.furniturestorelosangeles.com for two more minutes (*id.* at PLTF 039-040). She then returned to the Google search for "patio furniture los angeles" (*id.* at PLTF 040-043) before landing on World Market's homepage at www.worldmarket.com at 2:08:51 PM:

| Source Device | SOURCEID_11853_-_Valerie_Harper_-_MacBook_Pro.sparseimage/Macintosh HD – Data |
| --- | --- |
| Path | /Users/valharvey/Library/Safari/History.db |
| Browser | Safari |
| LogType | History |
| PrimaryKey | https://www.worldmarket.com/ |
| URL | https://www.worldmarket.com/ |
| LastVisit | 2024-09-09 14:08:51 (PDT) |
| DateVisited | 2024-09-09 14:08:51 (PDT) |
| VisitCount | 1 |
| VisitType | Local Device |
| Profile | valharvey |
| Source File | /Users/valharvey/Library/Safari/History.db |

*Id.* at PLTF 044.

After arriving at World Market's homepage, Harvey browsed for outdoor and patio furniture for about seven minutes before arriving for the first time on the Jarle Chairs. *Id.* at PLTF 044-046; *id.*, Ex. I, Harvey Dep. at 47:21-50:2. Harvey's browser history shows that she spent a minute and six seconds (from 2:15:53 PM to 2:16:59 PM) on the Jarle Chairs product page before

4

moving on to pages for "Unique & Affordable Furniture Sets" (*id.*, Ex. J, Browser History at PLTF 046); "Outdoor Furniture, Décor & More" (*id.* at PLTF 047); "Outdoor Furniture Sale – World Market" (*id.*); "New & Trending Home Décor & Furniture – World Market" (*id.*); "Shop All Outdoor – World Market" (*id.* at PLTF 048); and "Shop All Patio Furniture – World Market" (*id.* at PLTF 048-049). *See id.*, Ex. I, Harvey Dep. at 50:6-51:18.

Harvey then took a brief detour to look at "Stylish and Affordable" Rugs, (*id.*, Ex. J, Browser History at PLTF 049; *id.*, Ex. I, Harvey Dep. at 51:22-25) before returning to the Jarle Chairs at 2:21:16 PM (*id.*, Ex. J, Browser History at PLTF 049; *id.*, Ex. I, Harvey Dep. at 50:4-11). Her browser history shows that within two minutes, Harvey had placed the Jarle Chairs in her shopping cart and either clicked the "Proceed to Checkout" button, or clicked on the Cart icon, to open the Your Cart page. *Id.*, Ex. J, Browser History at PLTF 049; *id.*, Ex. I, Harvey Dep. at 52:12-20; *see also* Declaration of Holly Bauer in Support of Defendants' Motion for Summary Judgment as to Reliance ("Bauer Decl."), ¶ 6. When she opened her Your Cart page, it looked like this:



SAC, ¶ 22; Donald Decl., Ex. I, Harvey Dep. at 53:3-24; *see also* Bauer Decl., ¶ 6, Ex. C (including URL). Harvey confirmed in her deposition that the above image "accurately depict(s) what [she] saw when [she] placed the Jarle chairs in [her] cart," (Donald Decl., Ex. I, Harvey Dep. at 54:1-20; 55:9-18) and, in particular, that "an oversized item surcharge of $50, as well as a

5

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

shipping and handling charge of 49.95 were added to the total cost of the items." *Id*., Ex. I, Harvey Dep. at 53:3-24.

### C. Harvey Pauses to Contemplate Whether to Complete Her Purchase

Harvey's browser history shows that she paused for nearly six minutes, from 2:23:24 PM to 2:29:20 PM, after opening her Cart and before clicking Proceed to Checkout:

| Internet History | |
|---|---|
| Source Device | SOURCEID_11853_-_Valerie_Harper_-_MacBook_Pro.sparseimage/Macintosh HD – Data |
| Path | /Users/valharvey/Library/Safari/History.db |
| Browser | Safari |
| LogType | History |
| PrimaryKey | https://www.worldmarket.com/checkout |
| URL | https://www.worldmarket.com/checkout |
| Title | Checkout \| World Market |
| LastVisit | 2024-09-09 14:29:20 (PDT) |
| DateVisited | 2024-09-09 14:29:20 (PDT) |
| VisitCount | 1 |
| VisitType | Local Device |
| Profile | valharvey |
| Source File | /Users/valharvey/Library/Safari/History.db |

| Internet History | |
|---|---|
| Source Device | SOURCEID_11853_-_Valerie_Harper_-_MacBook_Pro.sparseimage/Macintosh HD – Data |
| Path | /Users/valharvey/Library/Safari/History.db |
| Browser | Safari |
| LogType | History |
| PrimaryKey | https://www.worldmarket.com/checkout?stage=customer#customer |
| URL | https://www.worldmarket.com/checkout?stage=customer#customer |
| Title | Checkout \| World Market |
| LastVisit | 2024-09-09 14:29:21 (PDT) |
| DateVisited | 2024-09-09 14:29:21 (PDT) |
| VisitCount | 1 |
| VisitType | Local Device |
| Profile | valharvey |
| Source File | /Users/valharvey/Library/Safari/History.db |

*Id*., Ex. J, Browser History at PLTF 049-050; *id*., Ex. I, Harvey Dep. at 56:21-57:3.

After initially claiming that she could not recall why there was a six-minute pause between opening her Cart and proceeding to the Checkout page, when asked whether she was "concerned about the oversized item surcharge and shipping cost," she responded "Yeah, I was probably contemplating," and "[j]ust vacillating because I wasn't expecting it." *Id*., Ex. I, Harvey Dep. at 57:8-20. She conceded, however, that "after [she] vacillated, [she] decided to go ahead with the purchase" (*id*. at 57:21-24) and readily confirmed that she "understood at that point that, if [she]went ahead with the purchase, [she] would pay the oversized item surcharge and the shipping charges… [a]nd the handling." *Id*. at 57:26-58:6.

6

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

After clicking Proceed to Checkout, she was taken to the Checkout page. *Id.*, Ex. J, Browser History at PLTF 050. Her Checkout page looked like this:



*Id.*, Ex. L, Exhibit 7 to Harvey Dep. ("Website Captures") at 2; *see also* Bauer Decl., ¶ 7, Ex. D (including URL). Harvey testified that she recalls seeing the Checkout page and, in particular, that "on the right-hand side, as you went through the checkout process, the shipping and handling and the oversized item shipping charge were both displayed throughout the checkout process." Donald Decl., Ex. I, Harvey Dep. at 60:9-12; 61:9-15.

Harvey next proceeded to the Shipping Information page, which looked like this:



*Id.*, Ex. L, Website Captures at 3; *id.*, Ex. J, Browser History at PLTF 050; *see also* Bauer Decl.,

7

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

¶ 8, Ex. E (including URL). Harvey testified that she recalled seeing this page and that "the shipping and handling and the oversized item shipping charges were both displayed on the right-hand side on the shipping page[.]" Donald Decl., Ex. I, Harvey Dep. at 62:1-13.

Harvey then proceeded to the "Payment" page which, like all prior checkout pages, conspicuously disclosed the shipping and oversized item charges:



*Id.*, Ex. L, Website Captures at 4; *id.*, Ex. J, Browser History at PLTF 050-051; *id.*, Ex. I, Harvey Dep. at 62:23-63:18; *see also* Bauer Decl., ¶ 9, Ex. F (including URL).

After entering her payment information, Harvey clicked the "Continue to Review Order" to advance to the Review Order page, which looked like this:

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

8

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

Donald Decl., Ex. L, Website Captures 5; *id*., Ex. I, Harvey Dep. at 64:18-65:12; *see also* Bauer Decl., ¶ 11, Ex. H (including URL). Harvey confirmed at deposition that the above accurately reflects the Review Order page she saw on September 9, 2024. Donald Decl., Ex. I, Harvey Dep. at 65:8-12. Upon arriving at the Review Order page, it took Harvey only sixteen seconds to decide to complete her purchase by pressing the "Complete Order" button. *Id*., Ex. J, Browser History at PLTF 049-051.

## III. ARGUMENT

### A. World Market Can Meet Its Burden by Showing Either that Harvey Did Not Rely on the Display Price in Completing Her Purchase or the Absence of Evidence of Reliance

"Summary judgment or adjudication of issues is appropriate if depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Kurin, Inc. v. Magnolia Med. Techs., Inc.*, 473 F. Supp. 3d 1117, 1126–28 (S.D. Cal. 2020),

9

*aff'd in part, appeal dismissed in part*, 2021 WL 5823707 (9th Cir., Dec. 8, 2021) (citing Fed. R. Civ. P. 56(a), (c)(1)). The burden on the party moving for summary judgment depends on whether it bears the burden of proof at trial. *Id.*

When the party moving for summary judgment bears the burden of proof at trial, it must come forward with evidence that would entitle it to a directed verdict if the evidence went uncontroverted at trial. *C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Where, as here, the moving party would not bear the burden at trial, it can meet its initial burden of production on summary judgment by "either of two methods." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.,* 210 F.3d 1099, 1106 (9th Cir. 2000). It "may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1106, (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

"If… a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103. The nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts[, but] must come forward with specific facts showing that there is a genuine dispute for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

**B.      Reliance Is an Essential Element of Each of Harvey's Claims**

Harvey's primary claim is that by failing to include the shipping and handling and oversized item charges in the initial display price of the Jarle Chairs, World Market misrepresented the cost of the items in violation of Civil Code § 1770(a)(29)(A), a recent amendment to the CLRA which added to the twenty-eight other unfair or deceptive practices in § 1770:

10

> Advertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges other than either of the following:
>
> (i) Taxes or fees imposed by a government on the transaction.
>
> (ii) Postage or carriage charges that will be reasonably and actually incurred to ship the physical good to the consumer.

Civil Code § 1770(a)(29)(A). Harvey also asserts claims under the UCL and FAL on the same misrepresentation/omissions theory. As to the UCL, Harvey alleges that "World Market's advertising of prices that do not include the 'Oversized Item Surcharge', the 'Shipping and Handling' charge and all other mandatory fees amounts to a deceptive business practice… because it was intended to and did mislead and deceive Plaintiff," and that "[h]ad World Market advertised the true total price of its products inclusive of all mandatory fees, and the actual cost of shipping its products, the reasonable consumer would have not purchased the product or would have purchased the product from a different company." SAC, ¶¶ 52-54. As to the FAL, Harvey alleges that "World Market disseminated or caused to be disseminated deceptive advertising of the cost of products on their website," that "World Market knew or should have known that the statements were false or misleading," and that "Plaintiff would not have purchased the chairs or would have purchased the product from a different retailer that rivaled the actual price that Plaintiff was charged." SAC, ¶¶ 59-64.

As this Court recognized in ruling on World Market's motion to dismiss, "[b]ecause Harvey's claims 'are premised on misleading advertising or labeling,' *Watkins v. MGA Ent. Inc.*, 550 F. Supp. 3d 815, 833 (N.D. Cal. 2021), they 'sound in fraud….'" Order at 2:26-3:1. "To proceed on a 'fraudulent omission' claim under the three statutes," the Court explained, "plaintiff must allege that she relied on the defendant's alleged omission." *Id.* at 4:23-25, *citing Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) ("An essential element for a fraudulent omission claim is actual reliance.") and *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1020 (9th Cir. 2020) (UCL and FAL).

In its Order on the motion to dismiss, the Court declined to accept World Market's argument that by proceeding with the transaction, Harvey demonstrated that the charges were not material *to her* and could not allege reliance as a matter of law, holding that "reliance is presumed

11

in section 1770(a)(29) claims—at least at the pleading stage for purposes of assessing a plaintiff's statutory standing." *Id.* at 7:16-8:1. In so ruling, however, the Court also recognized, consistent with well-established Ninth Circuit law, that the presumption of reliance is just that—a presumption—which can be rebutted by evidence showing that Harvey did not actually rely on the initial display price in completing her purchase:

> World Market's argument as to Harvey's reliance specifically is not lost on the Court. If Harvey did not <u>in fact</u> rely on the initial display price of the chairs, that would defeat the presumption of reliance, thereby dooming her claim (and, for purposes of this case, making her an inadequate class representative).

Order at 9:3-6 (emph. in orig.) (citing *Lytle v. Nutramax Laboratories, Inc.*, 114 F. 4th 1011, 1035 (9th Cir. 2024), *cert. denied* 145 S.Ct. 1308 (2025) (recognizing that "the presumption of reliance is rebuttable"); *see also Hamm v. Mercedes-Benz USA, LLC*, 2023 WL 4186013, at \*2 (N.D. Cal., June 23, 2023) ("like most presumptions, the presumption of reliance is rebuttable.").

### C.    The Presumption of Reliance Is Rebutted by the Undisputed Facts

#### 1.    To establish reliance, Harvey must prove that she relied *to her detriment* on the initial display price and thereby *altered her legal relations*

This Court's Order on World Market's motion to dismiss correctly recognized that where, as here, Plaintiff proceeds on a fraudulent omission theory, she must prove, as an essential element of her claim, that she *actually* relied on the initial display price of the chairs "when she purchased them." Order at 12:17-18. That is, Harvey may not merely show that she did *something* in reliance on the initial display price. She must show that she relied upon that price—more particularly, the absence of the shipping and oversized item charges in that price—in deciding to complete her purchase. As this point is critical to resolution of the instant motion, it is helpful to consider why this is so.

To maintain a cause of action for violation of the CLRA, a private plaintiff must prove that she suffered "damage as a result of" the violation. Civ. Code § 1780(a) (private right of action for consumer "who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770."). As the Supreme Court has explained, "not only must a consumer be *exposed* to an unlawful practice, but some kind of

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

12

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

damage must result." *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 641 (2009) (emphasis added); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1366 (2010) ("CLRA actions may be brought 'only by a consumer 'who suffers any damage *as a result of the use or employment*' of a proscribed method, act, or practice.") (emphasis in original)). And while at one time, the private right of actions in the UCL and FAL empowered roving private attorneys general to file lawsuits without any showing of harm, Proposition 64 changed all that. To maintain a private claim under the UCL or FAL, the plaintiff must establish not only that she lost money or property but also that "that economic injury was the result of, *i.e.*, *caused by,* the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011) (emphasis in original).

Because the claimed "damage" or "loss of money or property" must "result from the use or employment … of a method, act, or practice declared to be unlawful by Section 1770," "causation [is] a necessary element of proof." *Buckland v. Threshold Enterprises, Ltd.*, 155 Cal. App. 4th 798, 809 (2007), *as modified* (Oct. 22, 2007), *disapproved on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011); *Victor v. R.C. Bigelow, Inc.*, 2014 WL 1028881 at *5 (N.D. Cal. Mar. 14, 2014) ("The 'as a result' language means that actual reliance must be shown."). In the context of a false advertising claim, "justifiable reliance is the same as causation, thus, '[a]ctual reliance occurs when a misrepresentation is 'an immediate cause of [a plaintiff's] conduct, which alters his legal relations,' and when, absent such representation,' the plaintiff 'would not, in all reasonable probability, have entered into the contract or other transaction.'" *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 855 (2008), *as modified* (Jan. 28, 2008) (quoting *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 976 (1997), *as modified* (July 30, 1997) (cleaned up). As the Supreme Court explained in *Mirkin v. Wasserman*, 5 Cal. 4th 1082 (1993), "pleading reliance … is necessary to 'establish a complete causal relationship' between the alleged misrepresentations and the harm claimed to have resulted therefrom." *Id.* at 1092.

The necessary corollary to the need to establish an immediate causal link between the misrepresentation (or omission) and the claimed injury is that plaintiff must establish that she "relied *to [her] detriment* on the representation," (*Astiana v. Kashi Co.*, 91 F.R.D. 493, 508 (S.D.

13

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

Cal. 2013) (emphasis added)) and "altered [her] legal relations" as a result (*Engalla*, 15 Cal. 4th at 976). That plaintiff did *something* in reliance on the misrepresentation or omission is not enough to establish reliance. She must prove that she "entered into *the transaction* as a result of" the omission. *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005), *aff'd* 252 Fed. Appx. 777 (9th Cir. 2007) (emphasis added).

World Market recognizes that Judge Lin recently decided that "reliance must be evaluated at the moment of the initial omission, *i.e.,* when the consumer views the initial price communication, and not later upon eventual disclosure of the true price." *Mansfield v. StockX LLC*, 2025 WL 2811791, at *6 (N.D. Cal., Oct. 3, 2025). Respectfully, this cannot be correct, as the reliance shown must establish an immediate causal connection between the violation and the claimed damage, and "continuing the sales process" does not constitute cognizable damage. *See, e.g.*, *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1115 (N.D. Cal. 2016) ("Here, in contrast, Plaintiff has not alleged any facts that plausibly suggest the few seconds it takes to type a second word is something for which a reasonable consumer would expect to receive compensation."); *cf. Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946) ("When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded.  Split-second absurdities are not justified...."). Put differently, in the absence of evidence that the plaintiff faced undue pressure to complete the transaction or was otherwise swept up in the buying process and thereby deprived of agency, "continuing the sales process" results in no meaningful detriment or alteration of the parties' legal relations. *Cf. Veera v. Banana Republic, LLC*, 6 Cal. App. 5th 907, 920 (2016). Nor can Harvey show any other form of cognizable damage.[10]

Thus, to prevail on either of her three claims, Harvey may not merely show that she relied upon the initial display price in placing the items in her Cart, as she suffered no detriment from placing them in her Cart, and because she had in no way committed to purchase them at that point, she did nothing to alter her legal position. As this Court previously recognized, she must

---

[10] For example, Harvey elicited no evidence that she could have purchased the Jarle Chairs elsewhere, either at a lower price or with free shipping.

14

show that she "in fact" relied "on the initial display price of the chairs that she purchased from World Market *when she purchased them*." Order at 12:17-18.

### 2. Harvey did not rely on the initial display price in completing her transaction

The undisputed evidence here conclusively establishes that Harvey did not, in fact, rely on the initial display price of the Jarle Chairs in completing her purchase. Harvey testified that in late August 2024, she thought her patio "was looking bare" and decided to look for some patio chairs. Donald Decl., Ex. I, Harvey Dep. at11:19-12:12. She spent about twenty minutes browsing online at Ikea.com, Wayfair.com, Target.com, and Amazon.com, before deciding to "see if there was anything local" by running a Google search for "patio furniture los angeles." *Id*. at 43:23-44:1. After brief visits to Patioworld.com and FurniturestoreLosAngeles.com, she landed on World Market's homepage. *Id.* at 44:23-46:22. She browsed patio sets and outdoor furniture for about twenty minutes, she spent a minute looking at the Jarle Chairs, looked at some rugs, browsed a bit more, and then returned to the Jarle Chairs and placed them in her digital shopping Cart, where the shipping and oversized item charges were disclosed. *Id*. at 47:21-52:20. Her Your Cart page looked like this:



SAC, ¶ 22; Donald Decl., Ex. I, Harvey Dep. at 53:3-24; *see also* Bauer Decl., ¶ 6, Ex. C (including URL). Harvey confirmed in her deposition that the above image "accurately depict(s)

15

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

what [she] saw when [she] placed the Jarle chairs in [her] cart," (Donald Decl., Ex. I, Harvey Dep. at 54:1-20, 55:9-18) and, in particular, that "an oversized item surcharge of $50, as well as a shipping and handling charge of 49.95 were added to the total cost of the items" (Donald Decl., Ex. I, Harvey Dep. at 53:3-24).

Significantly, and indeed decisively here, Harvey's browser history shows that she paused for nearly six minutes after opening her Cart before clicking the "Proceed to Checkout" button. *Id.*, Ex. J, Browser History at PLTF 49-50; *id.*, Ex. I, Harvey Dep. at 56:21-57:7. When asked whether the six-minute pause was because she was "concerned about the oversized item surcharge and shipping cost," Harvey responded "Yeah, I was probably contemplating," and "[j]ust vacillating because I wasn't expecting it." *Id.*, Ex. I, Harvey Dep. at 57:8-20. She readily confirmed, however, that "after [she] vacillated, [she] decided to go ahead with the purchase" and that she "understood at that point that, if [she]went ahead with the purchase, [she] would pay the oversized item surcharge and the shipping charges… [a]nd the handling." *Id.* at 57:21-58:6. At the end of that six minutes, she clicked Proceed to Checkout and advanced to the Checkout page, which again clearly displayed both the shipping and handling charge and the oversized item surcharge:



Bauer Decl., ¶ 7, Ex. D; Donald Decl., Ex. J, Browser History at PLTF 050. Harvey testified that

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

16

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

she recalls seeing the Checkout page in substantially the same form at the time (Donald Decl., Ex. I, Harvey Dep. at 60:9-12; *id*., Ex. L Website Captures at 2), and specifically recalls that "on the right-hand side, as you went through the checkout process, the shipping and handling and the oversized item shipping charge were both displayed throughout the checkout process." *Id*., Ex. I, Harvey Dep. at 61:9-15.

Harvey next proceeded to the Shipping Information page, and the Payment Information page, which, like the Your Cart page, clearly and conspicuously disclosed the shipping and oversized item charges. After entering her payment information, Harvey clicked the "Continue to Review Order" button to advance the penultimate page in the checkout flow—the Review Order page—and had a final opportunity to decide whether to proceed with her purchase. Bauer Decl., ¶¶ 10-11. The page looked like this:



Donald Decl., Ex. L, Website Captures at 5; *id*., Ex. I, Harvey Dep. at 64:18-65:12; *see also*

NOT. OF MOT. AND MOT. FOR SUMM. JUDGMENT - CASE NO. 3:25-CV-01242-CRB

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

Bauer Decl., ¶ 11, Ex. H (including URL). A mere sixteen seconds later, Harvey clicked the "Complete Order" button to complete her purchase. She testified that she felt no undue pressure to complete the transaction and voiced no complaints about the quality of the chairs or the delivery. Donald Decl., Ex. I, Harvey Dep. at 67:2-9.

As the foregoing clearly shows, though she may have placed the Jarle Chairs in her Cart in reliance on the initial display price, any momentary misapprehension as to whether there was a delivery charge, or the absence of an oversize item charge, was quickly dispelled. She then spent nearly six minutes "contemplating" whether it was worth it to her to pay these charges to have the chairs delivered to her home. Asked for her thought process, she testified that she was "[j]ust vacillating because I wasn't expecting it." *Id.* at 57:12-17. She was next asked:

> Q:    But so after you vacillated, you decided to go ahead with the purchase, correct?
> A:    Yes.
> Q:    All right. And you understood at that point that, if you went ahead with the purchase, you would pay the oversized item surcharge and the shipping charges, correct?
> A:    And the handling.
> Q:    And the handling?
> A:    Yes.

*Id*. at 57:21-24. The questioning continued:

> Q:    At the time you decided to go ahead with the purchase, nobody forced you to go ahead with the purchase, correct?
> A:    No.
> Q:    There was nobody standing behind you with gun saying, "You need to go proceed with this purchase or you're dead"?
> A:    Not that I remember.

*Id*. at 67:2-9. As the foregoing clearly demonstrates, although she may not have initially anticipated that World Market charged a $49.94 flat fee and $50 oversized item charge to cover the cost of delivery, after "contemplating" and "vacillating," she made the decision, under no urgency, pressure or other undue influence, that it was worth it to her to pay the charges, and chose to complete her purchase. On these undisputed facts, no reliance can be shown and World Market is entitled to summary judgment.

18

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

### D.  Grant of Summary Judgment Here Is Required by Law and Is Consistent with Legislative Intent

In its Order on World Market's Motion to Dismiss, the Court expressed concern regarding the argument that because Harvey chose to proceed with her purchase after having been informed of the shipping and oversized item charges, Harvey could show neither reliance nor any damage. The Court was concerned that applying the reasoning of pre-§(a)(29) CLRA decisional law, such as *Charbonnet v. Omni Hotels & Resorts*, 2020 WL 7385828 (S.D. Cal. Dec. 16, 2020)[11] and *Hall v. Marriott Int'l, Inc.*, 344 F.R.D. 247 (S.D. Cal. 2023),[12] "would undermine the very purpose of that provision." Order at 6:10-13. The Court believed that "[t]hough the facts in *Charbonnet* and *Hall* are facially similar to the facts in this case, the reasoning of those courts regarding reliance is inapplicable in light of the Honest Pricing Law, which added the CLRA provision at issue in this case—section 1770(a)(29)." *Id.* at 6:10-12. It thus "decline[d] to adopt the reasoning of *Charbonnet* and *Hall* in this case, as doing so would be irreconcilable with the Legislature's intent in passing the Honest Pricing Law." *Id.* at 7:1-2.

### 1.  The Legislature Is Presumed to Have Been Aware of Prior CLRA Decisions Requiring a Showing of Reliance and Damage

Although World Market understands why the Court struggled to reconcile certain broad statements of purpose in the legislative history with the language of the amendment and prior CLRA decisional law, World Market respectfully submits that when the language and structure of the statutory scheme, well-worn canons of statutory construction, and the more specific descriptions of the bill and its purpose in the legislative history. are considered together, no such inconsistency exists. It is well established that "when the Legislature amends a statute, [courts]

---

[11] In *Charbonnet*, plaintiff alleged that "she was 'lured into Omni's artificially lowered rate' for a hotel room, and 'the property fee was not revealed until after the false price was first represented.'" 2020 WL 7385828, at*3 (citations omitted) (cleaned up). In that case, the court dismissed the plaintiff's claims, concluding that "[t]he fact that Plaintiff completed her reservation and paid the higher total price, knowing it was more than the advertised daily rate, shows that the addition of taxes and fees ultimately had no effect on her decision to book a room there." *Id.* at *5.

[12] In *Hall*, the court similarly rejected the plaintiffs' "bait-and-switch" theory, explaining that "[a]ny consumer's perception that the price reflected on the first page of Marriott's booking process constituted the total price is quickly and explicitly dispelled at every other page in the booking process." 344 F.R.D. at 266.

19

presume it was fully aware of the prior judicial construction" of the statute. *White v. Ultramar, Inc.,* 21 Cal. 4th 563, 572 (1999). And where "[t]he Legislature has made frequent amendments" to a statutory scheme, while leaving other provisions untouched, a strong presumption arises that the Legislature approves of prior judicial construction of the unchanged provision. *People v. Leahy*, 8 Cal. 4th 587, 604  (1994); *Big Creek Lumber Co. v. County of Santa Cruz*, 38 Cal. 4th 1139, 1156 (2006), *as modified* (Aug. 30, 2006) (that "[t]he Legislature has had ample opportunity over the past decade to amend [the provision at issue] to abrogate or modify the Court of Appeal's construction" but fails to do so constitutes powerful evidence of legislative acquiescence).

### 2. Section 1770(a)(29) Is Not *Sui Generis*

There is a long and extensive history of judicial construction of the private rights of action in the CLRA, UCL, and FAL, which includes *Charbonnet* and *Hall* but also many other decisions too numerous to count, holding that in the case of an alleged misrepresentation or omission, disclosure of the true facts defeats reliance, except in the most exceptional circumstances. *See, e.g.*, *Noll v. eBay Inc.*, 2013 WL 2384250, at *5 (N.D. Cal., May 30, 2013) (plaintiff could not show reliance or materiality of alleged omission where recurring nature of fees was actually disclosed); *Freeman v. Time, Inc.*, 68 F.3d 285, 289–290 (9th Cir. 1995) (dismissing CLRA omissions claim for lack of reliance and materiality because "[a]ny persons who thought that they had won the sweepstakes would be put on notice that this was not guaranteed simply by doing sufficient reading to comply with the instructions for entering the sweepstakes."); *Beyer v. Symantec Corporation*, 333 F. Supp. 3d 966, 980 (N.D. Cal. 2018) (requiring allegation that "in all reasonable probability" plaintiff would have acted differently if the allegedly omitted information had been disclosed); *Tomek v. Apple, Inc.*, 2012 WL 2857035, at *4 (E.D. Cal., July 11, 2012) ("all of Plaintiff's complaints regarding Defendant's battery-related promises fail because Defendant expressly disclosed that '[b]attery life and charge cycles vary by use and settings.'"); *Bobo v. Optimum Nutrition, Inc.*, 2015 WL 13102417, at *5 (S.D. Cal., Sept. 11, 2015) (consumer "cannot look at only one statement to the exclusion of everything else and claim he has been misled.").

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

20

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

The legislature is presumed to be aware of these decisions when it enacted § (a)(29) into law and, in fact, the legislative history includes extensive discussion of "hotel resort fees,"[13] making it extremely unlikely the Legislature was not fully aware of *Charbonnet* and *Hall* addressing similar claims regarding hotel fees. Despite this knowledge, when the Legislature added subsection (a)(29) to the long list of deceptive acts or practices in § 1770 CLRA, it took no action to amend the private right of action in § 1780. To the contrary, the legislative history makes clear that the new provision was intended to be enforced precisely like the twenty-eight other provisions, by way of the existing private right of action. *See* Donald Decl., Ex. M at 4 ("**How would this bill be enforced? …** It can be enforced both by public prosecutors, such as the Attorney General, and by private attorneys. (Civ. Code § 1780.)"). The new amendment must be construed *in pari materia* with the broader CLRA statutory of which it is a part; not as a *sui generis* ban untethered to the longstanding limits on private actions. *Ayala-Chavez v. U.S. I.N.S.*, 945 F.2d 288, 291 (9th Cir. 1991) ("Because the 1990 Act simply adds additional provisions to the terms of the underlying statute, the ADAA, and must be interpreted in pari materia with it, we look to the ADAA in order to determine whether the 1990 amendment at issue here applies in petitioner's case."); *People ex rel. Gillespie v. La Barre*, 193 Cal. 388, 391 (1924) ("Statutes are to be regarded as forming parts of one great and uniform body of law, and are not to be deemed isolated and detached systems complete in themselves.'").

Indeed, in response to opposition from a coalition of business groups, including the California Chamber of Commerce and TechNet, the Legislature took pains to clarify that SB 478, by which (a)(29) was added to the CLRA, did ***not effect a change in the law*** and was instead aimed at discouraging proliferation of undisclosed fees by an *in terrorem* effect:

> What makes the CLRA effective is its enumeration of very specific acts that constitute violations…. There are currently 28 such prohibitions codified under the CLRA. Each of these practices is also unlawful under the FAL and/or the UCL. But specifically codifying them in the CLRA has made it clear to all economic actors that these practices are unlawful and must cease, and that lawbreakers will be held liable. Experience has shown that

---

[13] *See See* Donald Decl., Ex. N pp. 5-7, 10, 11.

21

> codification under the CLRA is effective at ending the identified unlawful business practices.

Donald Decl., Ex. M at 8; *see also* SB 478, Section 1 (legislative statement of purpose stating that amendment addresses conduct already "prohibited by existing statutes, including the Unfair Competition Law (Chapter 5 (commencing with Section 17200) of Part 2 of Division 7 of the Business and Professions Code) and the False Advertising Law (Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code).")[14]

Notably, in crafting this response, the bill's author expressly referenced *Freeman v. Time, Inc*., 68 F.3d 285, 289–90 (9th Cir. 1995), in which the Ninth Circuit dismissed a CLRA omissions claim for lack of reliance because "[a]ny persons who thought that they had won the sweepstakes would be put on notice that this was not guaranteed simply by doing sufficient reading to comply with the instructions for entering the sweepstakes." And, in fact, the bill's author sought to dispel concerns that SB 478 would result in substantial new liability for businesses by emphasizing that the remedies would be effectively the same as the remedies already available under the UCL and FAL and that, "[a]s a further safeguard, the CLRA imposes stringent requirements to seek class relief for violations, requirements that are in many ways more stringent than those under the FAL, such as the notices required to be given to potential CLRA class members. (Civ. Code § 1781.)." Donald Decl., Ex. M at 9.

It is important to recognize here that the Legislature had a variety of options in trying to curb unlawful "junk fees." It could have created a new standalone junk fee ban with its own more lenient private right of action that did not require any showing of damage or loss of money or property, as it did in the California Invasion of Privacy Act, § 637.2 ("It is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages."). It did not. It chose instead to house the new provision within the well-worn and oft-construed CLRA statutory scheme, and to specifically affirm that it would be enforceable just like all the other 28 provisions, "by public prosecutors, such as the Attorney General, and by private attorneys [under] []Civ. Code § 1780[]." Donald Decl., Ex. M at 4. It is

---

[14] *See* https://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=202320240SB478

22

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

thus clear that notwithstanding certain broad proclamations regarding the evils of junk fees in the legislative history, the Legislature did not intend to create the sort of free-wheeling pre-Proposition 64 UCL private right of action that led to a flood of new lawsuits by individuals who had suffered no injury. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 321 (2011) (noting that "[t]he intent of [Prop 64's amendment to the UCL and FAL private rights of action] was to confine standing to those actually injured by a defendant's business practices…."); *In re Tobacco II Cases*, 46 Cal. 4th 298, 314 (2009) ("[T]he effect of Proposition 64 is to 'prevent uninjured private persons from suing for restitution on behalf of others.'"). Thus, while the Court was concerned that applying pre-SB 478 decisional law to the new amendment would blunt its impact, the Legislature considered that possibility and chose to not open the flood gates to new litigation by putative class action plaintiffs who had suffered no real harm from a putative violation.

### 3.     Construing subsection (a)(29) *in pari materia* with the broader CLRA statutory scheme would not render the new provision of no practical effect

The Order expressed concerned that construing § 1770(a)(29) in accordance with pre-SB 478 decisional law might render the new provision of "no practical effect." Order at 7:11-13. As explained above, however, SB 478 was not intended to mark a sea change in the treatment of undisclosed fees under the law, but rather to raise awareness of the pre-existing prohibition on such fees by specifically branding them as unlawful. Recalling the *in terrorem* impact of amendments to add § 1770(a)(23), prohibiting door-to-door solicitations of senior citizens, the bill's author explained:

> Prohibiting this very specific act in the CLRA was, by all accounts, successful at curbing this problem—despite the fact that these acts were already illegal under the FAL and/or the UCL. It is hoped that this bill's codification of fee transparency—as paragraph (29) under the CLRA—will be similarly effective at curbing the use of junk fees.

Donald Decl., Ex. M at 8-9.

Of perhaps equal significance, in passing SB 478, the Legislature made clear that, in addition to private enforcement, violations of the new law are subject to prosecution by the Attorney General in a public enforcement action. *See Id*. at 4. As the Ninth Circuit has noted, "[d]espite the importance of private enforcement of the UCL and FAL, such private suits do not

23

and cannot substitute for public enforcement actions, which serve as a far greater deterrent and thus a greater protection." *California v. IntelliGender, LLC*, 771 F.3d 1169, 1174 (9th Cir. 2014).

Moreover, and of at least equal significance, there are numerous examples in the existing decisional law and public discourse of scenarios in which a consumer might establish reliance and damage despite proceeding with a transaction after disclosure of the offending fees. The classic example is *Veera v. Banana Republic, LLC*, 6 Cal. App. 5th 907 (2016), in which shoppers were lured into the store by a 40% off sign only to be told, after waiting in a lengthy line to finally get to the register, that their items were not on sale. The plaintiffs testified that they felt pressured under threat of scorn or humiliation to complete the purchases even after learning the true facts. The Court of Appeal held that there was "a triable issue whether, in all reasonable probability, in the absence of the allegedly false advertising, they would have engaged in the injury-producing conduct, *i.e.,* would have bought certain items at full price despite the advertised discount." *Id*. at 919. The court explained that "it was the temporal proximity of that chain of events, and the pressure the events brought to bear on plaintiffs' judgment, that played a substantial role in leading them to purchase the items they did, even though they knew the discount did not apply." *Id.* at 920.

Courts have also held that reliance can be shown where the eventual disclosures were insufficiently conspicuous or deceptive. *See, e.g.*, *Watson v. Crumbl LLC*, 736 F. Supp. 3d 827, 841 (E.D. Cal. 2024) (distinguishing *Charbonnet* and holding that claim was stated where service fee was buried and misleadingly labeled under a separate line item for "taxes and fees"). One can imagine other circumstances in which the reliance requirement would be no bar to a claim, such as where a consumer scrambles to get in queue for sought-after concert tickets only to be presented with exorbitant service fees when it is their turn to buy, feeling they had no choice but to proceed or risk the tickets selling out before by the time they tried another seller. In fact, this very situation (involving Taylor Swift tickets) was a key impetus for the enactment of § 1770(a)(29).[15] Thus, the courts have already sorted out the reliance conundrum envisioned by

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

---

[15] https://oag.ca.gov/news/press-releases/ahead-taylor-swift%E2%80%99s-california-shows-attorney-general-bonta-warns-californians

24

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

the Court and the existing decisional law provides an effective framework for punishing the conduct which results in actual harm to consumers.

Finally, even if the Legislature *had* actually inadvertently crafted a solution with an unintentionally narrow impact, it is not for the courts to rewrite a statute to correct the Legislature's mistake in the name of liberal construction. *In re B.L.*, 204 Cal. App. 4th 1111, 1116 (2012) ("'Appellate courts may not rewrite unambiguous statutes'" or "rewrite the clear language of [a] statute to broaden the statute's application.'"). In fact, courts have consistently declined to expand the reach of the CLRA where it would be inconsistent with its terms. *See Berry v. American Express Publishing, Inc.*, 147 Cal. App. 4th 224, 232 (2007) ("We cannot, however, rewrite a statute under the guise of a liberal interpretation. Although CLRA has been interpreted broadly, courts have not expanded it beyond its express terms.*")*; *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1007–08 (N.D. Cal. 2012) (rejecting plaintiffs' argument liberal construction of CLRA supporting construing the terms "goods or services" to include Facebook credits).

The undisputed facts here make clear that Harvy did not, in fact, rely on the absence of the flat shipping fee or oversized item charge in completing her purchase and suffered no cognizable harm from any momentary misapprehension on this point. Granting summary judgment on these facts is required under well established law and is entirely consistent legislative intent.

## IV.    CONCLUSION

Because World Market has conclusively negated the essential element of reliance, and further shown that Harvey has not, and cannot, elicit any evidence of reliance, World Market is entitled to summary judgement on each of her claims.

Dated: December 12, 2025

Respectfully submitted,

BRYAN CAVE LEIGHTON PAISNER LLP

Daniel T. Rockey
Merrit M. Jones

Attorneys for Defendant
WORLD MARKET, LLC

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-4070

26